GEORGE L. FISHER, CHARLES J. FISHER, LUTHER W. FISHER, and others, Respondents, *v.* JAMES HALL, and MICHAEL GILLEN, Appellants.

Where a conveyance of real estate has been subscribed and sealed by the grantor, attested by the witnesses under a clause stating that it had been sealed and delivered in their presence, but the grantee was not then present, and remained ignorant of the existence of the deed until long after the death of the grantor, and the grantor continually remained in the possession of the premises described until his death, when the deed was found among his papers,—*Held*, that such conveyance was wholly inoperative to pass the title, and no delivery thereof to the grantee could be presumed or inferred from these facts.

It is not necessary, that the grantee, or his agent, should be present at the subscription, sealing, and witnessing of a deed, or himself, actually manually receive the instrument, to render it operative; but it should be placed

Statement of case.

within the power of some other person for the grantee's use, or the grantor should unequivocally indicate it to be his intention, that the instrument should take effect as a conveyance of the property, so that if he retain the possession of the deed, it should appear to be merely as bailee of the grantee.

Under a devise, in 1834, to the testator's son, "G. in trust, and for the use of his children, and their heirs, reserving the income of the above property for the benefit of my son G. and his children, during their natural life," stating that it is the testator's will, "that the property devised should remain undivided, and in common until the youngest child shall have attained the age of eighteen years," the property became vested in G. and his children, as tenants in common.

A misjoinder of parties plaintiff, when apparent upon the face of the complaint, cannot be taken advantage except by demurrer.

(Cause argued October 6th, 1869, and decided December 22d, 1869.)

Appeal from the judgment of the Supreme Court in the first judicial district, affirming judgment for the plaintiff, on the report of W. T. McCoun, referee.

This action was brought by the plaintiffs, as devisees, under the will of Leonard Fisher, deceased, for the recovery of the possession of certain undivided interests in the premises situated in the city of New York, known as No. 66 Centre street. The following is the devising clause in the will:

"I give and bequeath unto my son George, in trust and for the use of his children and their heirs, all that house and lot of ground, known on said map as lot number twelve, Centre street;" reserving the income of the above property for the benefit of my son George, and his children, during his natural life. And it is my will that the above property should remain undivided and in common, until the youngest child shall have attained the age of eighteen years."

This will was executed in 1833, and the testator died February, 1834. The plaintiffs are the children, and their husbands, and the grandchildren of George Fisher.

The defendants claimed title to the premises under a deed executed by Leonard Fisher, in his lifetime, dated September 19th, 1822, and retained among his papers until after the

time of his decease, purporting to convey them to his son, George Fisher, and a deed executed and delivered by George Fisher to the defendant, James Hall. The issues in the action were referred to a referee, who reported in favor of the plaintiffs. From the judgment entered upon the report, the defendants appealed to the General Term of the Supreme Court in the first district, where the judgment was affirmed. And the defendant then appealed to this court. The facts, with reference to the execution of the deed and its custody, are fully stated in the opinions.

*Marshall S. Bidwell,* for the appellant, upon the validity of the deed, cited, 7 Edw., 4 Year Book, fol. 20, b. pl., 21 (1467); *Taw* v. *Benjamin* (Dyer, 167); 6 Bendloe R., 75, (1559); Brooke's Abr., fol. 246, 7; pl. 29 (1573); *Alford & Lea's Case,* 2 Leon., 110 (1588); *Butler & Baker's Case,* 3 Co. R., 26, b., 272 (1592); *Markam* v. *Bury Gonaston* (Cro. Eliz., 627 (1599); *Clayton's* R., 31, Case 53 (1635); 2 Rol. Abr., 24, l. 42; 25, l. 30 (1651); *Clavering* v. *Clavering* (2 Vernon, 473); *Naldred* v. *Gilham* (1 P. Wm's., 577); *Bouton* v. *Bouton* (1 Atk. 625); *Smith* v. *Smith* (Ambler., 264); *Thompson* v. *Leach* (2 Vent., 198, 211); Lady Hudson's Case, 2 Vern., *supra*; *Exton* v. *Scott* (6 Sim., 31); *Fletcher* v. *Fletcher* (4 Hare, 67); *Hope* v. *Harman* (16 Q. B., 751, note 11); *Jeffries* v. *Alexander* (8 House of Lord's Cases, 594); *Stilwell* v. *Hubbard* (2 Wend., 44); *Jacobs* v. *Alexander* (19 Barb., 243); *McLean* v. *Button* (id., 450); *Roosevelt* v. *Carow* (6 Barb., 190); *Jackson* v. *Perkins* (2 Wend., 308); *Souverlye* v. *Arden* (1 J. Ch. R., 240); *Sterns* v. *Arden* (id., 266); *Verplank* v. *Sterns* (12 J. R., 536); *Ruggles* v. *Lawson* (13 J. R., 285); *Tooley* v. *Dibble* (2 Hill, 641); *Goodell* v. *Pierce* (2 Hill, 659); *The Lady Superior* v. *McNamara* (3 Barb. Ch. R., 375); *Read* v. *Robinson* (6 W. & S., 329); *Belden* v. *Carter* (4 Day, 66); *Stewart* v. *Stewart* (5 Conn., 317); *Merrills* v. *Swift* (18 Conn., 257); 31 Conn., 428; 9 Mass., 307, 310; *Moore* v. *Houghton* (9 Allen, 102, 106); *Buffum* v. *Green* (5 N. H. R., 71, 80); *Byers* v. *McClana-*

*han* (6 G. & J., 258, 256); 3 Maryl., 67; *Kane* v. *Mackin* (9 S. & M., 367, 392); *Snyder* v. *Lackmen* (2 Ired. Eq., 360); *Houghton* v. *Barney* (id., 393, 403); *Dawson* v. *Dawson* (1 Rice Eq., 244); *Harris* v. *Saunders* (2 Strobh. Eq., 370).

*Benjamin G. Ferris* and *Amasa J. Parker*, for the respondent, on the question of delivery, cited *Roosevelt* v. *Carow* (6 Barb., 198); *Jacobs* v. *Alexander* (19 Barb., 243); *Jackson* v. *Phipps* (12 John., 418); *Jackson* v. *Richards* (6 Cowen, 616); *Maynard* v. *Maynard* (10 Mass., 455); *Brown* v. *Austin* 35 Barb., 361); *Critchfield* v. *Critchfield* (24 Penn., 100); *Stilwell* v. *Hubbard* (20 Wend., 44); *Cook* v. *Brown* (34 N. H., 460); *Warren* v. *Sewell* (11 Foster, 332); *Canal Bank* v. *Reckless* (1 Halstead Ch., 490, 650); *Hatch* v. *Haskins* (5 Shep., 391); *Scrugham* v. *Wood* (15 Wend., 545); *Lindsey* v. *Lindsey* (11 A., 621); *Hannah* v. *Swamee* (8 Watts., 9); *Wood* v. *Chapin* (3 Kern., 509, 514).

DANIELS, J.  The deed from Leonard Fisher, to his son, George Fisher, was dated on the 19th day of September, 1822, and from that time until the month of September, 1835, when Leonard Fisher died, it appears to have remained in his possession, for it was found among his papers after his decease.  If the evidence of George Fisher, taken upon the trial, was to be credited, and that, under the circumstances, was for the referee to decide, he knew nothing of the deed until December, 1840, when he procured it from a trunk containing his father's papers, previously deposited by the executors of his father's estate, in the office of their counsel. The deed contained an attestation clause, which was subscribed by two witnesses, stating that it was sealed and delivered in their presence.  But no evidence was given, or probably could be given, as the grantor and both the witnesses were dead before the trial, showing what actually did transpire when the deed was executed, beyond that contained in the proof made by one of the witnesses before the commis-

sioner, at the instance of George Fisher, after he had obtained possession of the deed. By the oath of this witness, which was taken on that occasion, it appeared, that Leonard Fisher, the grantor, executed the deed, and acknowledged that he had executed it. Nothing more than that was stated by this witness to have taken place at that time, except the fact that he became a subscribing witness to the deed. No declaration was stated to have been made by the grantor showing that he intended the instrument should then take effect as his deed, or that any formal delivery was made of it to any person for the use or benefit of his absent son, who was the grantee named in it. This witness was produced for the purpose of proving that the deed had been legally executed by the grantor; and it may therefore be presumed that he stated all that he was able to disclose on that subject when he was before the commissioner for that purpose.

It was alleged in the complaint that the deed was *executed* by Leonard Fisher. And this, it was insisted by the defendant's counsel, could be relied upon as conceding a legal delivery of the instrument. Such may be assumed to be the ordinary legal signification of this term, but it was not what was intended by them, when they were used in the complaint; for they were immediately followed by the qualifying and restricting averment, that the deed never was delivered by the grantor, or any one in his behalf, to George Fisher, but that it remained in the possession of Leonard Fisher until his decease, and was afterward found among his papers, and taken possession of by George Fisher, who was one of the executors. Instead of affirming, the complaint negatives the idea of a delivery of the deed, unless these facts themselves legally support the conclusion sought to be derived from them.

Under this state of the pleadings and the evidence, the referee found that the deed had been subscribed and sealed by Leonard Fisher; that the witnesses attested it, under the clause stating that it had been sealed and delivered in their presence; that the grantee was not then present, and remained

ignorant of the existence of the deed until long after the
death of his father, and that the latter, during the period of
thirteen years intervening between the date of the deed and
his own decease, continually remained in the possession of
the premises, and in the receipt of the rents and profits to his
own use.   By these facts the referee must have intended to
be understood as finding that the deed was not in fact deliv-
ered, although he has failed to say so in so many words ; for
he afterward follows them with his legal conclusions, one of
which was, that the deed never took effect for want of deliv-
ery.   This was indispensable to the support of the conclusion
he arrived at, and the statement just referred to indicates it to
have been his purpose to find that as a fact.

The facts thus found by the referee, as well as those alleged
in the complaint, are insufficient to constitute a delivery of
this deed.   It is not necessary that the grantee, or his agent
or servant, should be present at the execution, in order to
have such a delivery of the instrument made as will give it
operative vitality and effect.   But it is necessary that it
should be placed within the power of some other person for
the grantee's use, or that the grantor shall unequivocally indi-
cate it to be his intention that the instrument shall take effect
as a conveyance of the property, in order to have it produce
that result.   The mere subscribing and sealing, accompanied
with the ordinary attestation of those acts by the witnesses,
which is all that there is any reason for supposing was done
in the present instance, followed by the grantor keeping the
deed in his own custody, and his continued possession of the
premises, are not sufficient to constitute a legal delivery of a
sealed instrument.   Several old authorities in equity were
cited upon the argument for the purpose of showing the rule
to be different from this statement of it.   And it must be
confessed that they appeared to maintain that result; but
they are evidently so directly opposite to the entire current
of modern authority, both in the courts of this and of the
other States, as well as of the United States, as to require
them to be repudiated by this court.   A rule of law by which

a voluntary deed, executed by the grantor, afterward retained by him during his life in his own exclusive possession and control, never during that time made known to the grantee, and never delivered to any one for him, or declared by the grantor to be intended as a present operative conveyance, could be permitted to take effect as a transmission of the title, is so inconsistent with every substantial right of property, as to deserve no toleration whatever from any intelligent court either of law or equity.

It was not sanctioned by anything required by the decision of *Doe* v. *Knight* (12 Eng. C. L., 351; 5 B. & C., 671), for there the mortgage in controversy was made pursuant to an understanding on the part of the mortgagee that the debt due to him was to be secured by the mortgagor, and it was first declared by him to be his act and deed, and afterward actually delivered to his sister for the mortgagee. The case was tried before the jury, and disposed of by the court upon the point whether even that was sufficient to constitute an effectual legal delivery; and it was held that it was, which was all that the case really decided. The case of *Souverlye* v. *Arden* (1 John. Ch., 240), was equally as pointed in this respect in its circumstances; and the language of the chancellor, it will be found upon examination, was not designed to extend beyond them in his decision of the case. (Id. 255, 6.) In *Ruslin* v. *Shield* (11 Georgia, 636), it was held that the attestation clause reciting that the deed was delivered, was not of itself sufficient to establish a delivery; and it was afterward held by the same court that there was no delivery of a deed, which the grantor concealed from the grantee, and held, not in subordination to him, but independent of his will, and with the intention that it should not go into his custody. (*Rutledge* v. *Montgomery*, 30 Georgia, 641; see also *Critch-field* v. *Critchfield*, 24 Penn., 100.) The authorities upon what is necessary to create a legal delivery of a deed, are well collected in part 2, Cowen & Hill's Notes, 3d ed., 826-31; and their general result is stated to be, that " to constitute a complete delivery of a deed, the grantor must do some act

putting it beyond his power to revoke." The delivery need not be to the party, but may be to another person, by sufficient authority from the party; or it may be to a stranger, for and in behalf and to the use of the party, without authority." (Id., 826.) And to the like effect are the cases of *Church* v. *Gilman* (15 Wend., 656, 660, 661); *Stilwell* v. *Hubbard* (20 id., 44); *Merrills* v. *Swift* (18 Conn., 257); *Tibbals* v. *Jacobs* (31 id., 428); *Bary* v. *Anderson* (22 Ind., 36, 39); *Parmelee* v. *Simpson* (5 Wallace, 81). In *Younge* v. *Gailbeau* (3 Wallace, 636, 641), it was held that "the delivery of a deed is essential to the transfer of the title. It is the final act without which all other formalities are ineffectual. To constitute such delivery, the grantor must part with the possession of the deed, or the right to retain it." A delivery may be inferred from the fact that the grantor has had the deed recorded; but it is not necessary to refer to the cases sustaining that principle, because the absence of that fact renders them inapplicable to the present controversy. To bring this case within the rule already mentioned, enough should have been shown to have been done to render the grantor a mere bailee of the deed for the grantee. No such relation was either proved by the evidence or found by the referee from it; and no title to the land consequently vested by virtue of the deed in the grantee, and for that reason, he could convey none to the defendant Hall. (*Critchfield* v. *Critchfield*, 24 Penn., 100.) As the grantor, Leonard Fisher, did nothing, and neither permitted nor authorized anything to be done or represented indicating that George Fisher owned the land described in the deed, there was no ground on which the principle of estoppel could be rendered applicable to the transaction.

On the 7th day of February, 1834, Leonard Fisher made his will, by which he devised the property in question to his son George, in trust, and for the use of his children and their heirs, reserving the income of it for the benefit of his son George and his children during his natural life. He then added, " it is my will, that the above property should remain

undivided, and in common until the youngest child shall have attained the age of eighteen years." As this devise gave his son George and his children the use of the property, it did not create a trust within the provisions of the statute on that subject, but it gave them the possession of the property devised. The last clause declaring that the property should remain undivided, and in common evinces it to have been the intention that the devisees should have the possession. And reserving the income for the benefit of the testator's son and his children, during his natural life, was entirely consistent with that intention. No control over the income was given to the testator's son, beyond that arising out of his own share of the estate devised; and no duty whatever, was imposed upon him concerning the income. The testator attempted to create a mere passive trust which the laws of this State did not at that time allow to be done. The property, therefore, became vested, under the statute, in the son of the testator and his children as tenants in common. (3 R. S. 5th ed., 15, §§ 47, 49; *Rawson* v. *Lampman*, 1 Seld., 456; *Wright* v. *Douglass*, 3 id., 564.)

As tenants in common, representing less than the aggregate common interests in the estate, the plaintiffs probably would have been unable to have maintained a joint action, if that objection had been taken in time. (*Jackson* v. *Bradt*, 2 Caines Repts., 169, 174; *Malcom* v. *Rogers*, 5 Cowen, 188; *Cole* v. *Irvine*, 6 Hill, 634, 638–9.) But as the facts of the case were fully stated in the complaint, showing that the plaintiffs did not represent all the common interests in the estate, if any objection was intended to be taken to their right to maintain the action on the account, it should have been presented at that time. By answering and taking issue on the case alleged, this objection was waived, and it became the duty of the court to try and determine the issue as it had been joined by the pleadings. If any objection existed to the form in which the action was brought, it was that the complaint contained several causes of action which had been improperly united. And that should have been raised by

demurrer. As it was not, it was waived within the express language of § 148 of the Code. The judgment should be affirmed with costs.

All the judges concurring.

Judgment affirmed.