[This case was pending until the January Term, 1885, upon a peti-tion for an extension of the opinion; hence, its publication with the opinions of that term.]

CASE 8—PETITION EQUITY—MAY 27, 1884.

## Dawson v. Lee.
## Lee v. Hill.

APPEALS FROM BULLITT CIRCUIT COURT.

1. CONSTITUTIONAL LAW—DISCRIMINATION AGAINST NEGROES—TAXA-
   TION.—All legislation which discriminates against any particular
   race or class of persons is in violation of the Constitution of the
   United States. Therefore, State taxation for purposes of educa-
   tion should be provided for by general laws, applicable to all
   classes and races alike, all the children of the State being entitled
   to an equal share of the proceeds of the "Common School Fund,"
   and of all State taxation for purposes of education.
   An act, entitled "An act to establish a uniform system of common
   schools for the colored children of this Commonwealth," approved
   February 23, 1874, is unconstitutional, because, by implication, it
   excludes the negro children of the State from any share of the
   proceeds of the "Common School Fund" set apart by the Con-
   stitution, as well as from the annual tax levied on the property
   of white persons for school purposes.
2. SURETIES—SIGNING OF NAME BY AGENT.—Where the name of a
   person is signed as surety by an agent, he is not bound thereby
   unless the agent's authority was in writing signed by him. A
   writing signed by another for the person to be bound is not a suffi-
   cient authority.

vol. 83.—4

3. PAYMENT BY SURETY NOT BOUND.—Where one pays a debt for which he supposes himself to be bound as surety, when in fact he was under no legal obligation to pay, he occupies no better attitude than a mere stranger or volunteer, and can not be substituted to the creditor's rights against the principal or the principal's vendee.

4. SHERIFF—LIEN OF SURETIES—RIGHTS OF VENDEE.—Where the sureties of a sheriff claim a lien, by substitution to the rights of the Commonwealth, upon land which the sheriff has conveyed to another, the sheriff's vendee is entitled to share *pro rata* with the sureties in the proceeds of the land, to the extent that the amount paid by him upon the purchase price was paid by the sheriff upon the revenue for which the sureties were bound; but he is not entitled to priority, the lien of the Commonwealth existing when he made the payment.

5. PURCHASER FROM DEFAULTING SHERIFF—IMPROVEMENTS.—Where one purchases land from a defaulting sheriff, and in good faith makes necessary improvements; without notice that his vendor has defaulted, he is entitled, as against the sheriff's sureties claiming a lien upon the land by substitution to the rights of the Commonwealth, to be re-imbursed out of the proceeds of sale to the extent that the improvements are shown to have increased the vendible value of the land.

6. SHERIFF—TAXES COLLECTED UNDER VOID ACT.—The Commonwealth is not entitled to money collected by the sheriff, as taxes, under a void statute, and, therefore, has no lien therefor to which the sureties of the sheriff can be substituted.

R. McCONATHY FOR APPELLANT.

Brief not in record.

F. P. STRAUS FOR APPELLEE.

Brief not in record.

JUDGE LEWIS DELIVERED THE OPINION OF THE COURT.

This is an action by appellant Dawson and appellees Hill and Greenwell, to subject a tract of land owned by J. A. Lee to the payment of $——, one-third of which they each, as alleged sureties in a revenue bond given by J. H. Hays, sheriff of Bullitt county, paid into the Treasury of the State.

Upon final hearing, personal judgment was rendered

in favor of each of the plaintiffs in the action against Hays for the sum of $824.16, subject to certain credits mentioned, and the land was directed to be sold to satisfy, first a debt in favor of Simmons secured by mortgage executed prior to the revenue bond, and second, to pay the claims of Hill and Greenwell. But it was adjudged that Dawson is not entitled to a lien upon the land, and the petition, so far as it sought to sell it to pay his claim, was dismissed.

From the judgment Dawson & Lee have prosecuted separate appeals. But as the questions involved are connected, and only one transcript is presented, they will be heard together.

As the sale and conveyance of the land in controversy by Hays to Lee was made in April, 1881, after the execution by Hays and his securities of the revenue bond, which was done the first Monday in January, 1880, it is manifest the lien of the Commonwealth was created and existed before Lee acquired title to the land, and that those of the plaintiffs who were bound as sureties are entitled by substitution to a lien on the land for whatever amount they have been compelled to pay into the Treasury of the State by reason of the default of the sheriff.

But it was alleged by the defendant, Lee, that Dawson never, in the manner required by law, executed the revenue bond, and was not legally bound as surety to pay any part of the revenue into the Treasury of the State, and that such payment by him was voluntary, and gave him no right to the lien held by the Commonwealth upon the land purchased by Lee of the sheriff, Hays.

It appears that the name of Dawson was signed to the bond without his presence, by the clerk of the county court, in pursuance of authority contained in a paper purporting to be a power of. attorney executed in presence of one Kinnison, who signed Dawson's name, and his own as an attesting witness.

Section 20, chapter 22, General Statutes, is as follows: "No person shall be bound as the surety of another by the act of an agent, unless the authority of the agent is in writing signed by the principal; or if the principal do not. write his name, then by his sign or mark made in the presence of at least one. credible attesting witness."

"The language of the section seems to be imperative, and without exception, that in all cases of suretyship, in order that the act of one may bind another as surety, such act must be done under written authority from the one held to answer as surety." (Billington v. Commonwealth, 79 Ky., 400.)

In that case the name of the surety was signed not to a power of attorney but directly to a bail bond, in presence of the judge of the court, who accepted the bond, and in presence of the surety and by his direction, yet not being signed by the surety in person but by his attorney, he was held not to be liable.

One of the objects for which the statute was enacted was to correct the evil growing out of the loose practice of those whose duty it is to take official and bail bonds, and it can not be properly construed otherwise than has been done in the case referred to.

It being then clear that Dawson was not legally bound as surety upon the revenue bond executed by

Hays, the sheriff, and that the payment made by him into the State Treasury was voluntary, is he now entitled to a lien by surrogation upon the land of Lee, the purchaser, in order to indemnify himself.

"The general principle, that no one can make himself the creditor of another without his consent, or against his will, is familiar. But where one is surety for another, and pays the debt which the principal owes, the law implies that the latter requested such payment to be made, and also implies a promise to repay him. But the surety must be under some legal obligation to pay, otherwise the implication of a request to pay and promise to pay will not arise." (Kimble v. Cummins, 3 Met., 327.)

In that case an execution upon a replevin bond in which Cummins was the surety of Kimble, being issued and levied upon the property of the former, he satisfied the debt, and then by an action in equity sought to subject certain property of his principal to re-imburse himself. But as more than one year had elapsed from the maturity of the replevin bond until the issuance of the execution which Cummins satisfied, he was by statute released from all liability upon the bond, and, consequently, as held by this court, he could not pay the debt and look to his principal for re-imbursement. For, after his release, he was no longer a surety, and, therefore, not entitled to any of the rights growing out of such relation.

In the case of Spillman & Duff v. Smith, 15 B. M., 134, the same principle was held applicable where the surety in a sale bond satisfied it after he became released from legal liability.

It was thus determined in both those cases, and we think correctly, that a surety in a bond who satisfies it after he has been released as such, "occupies no better attitude than that of any other person paying the debt of another without request or authority, implied or expressed." And that a mere stranger or volunteer, who pays the debt of another, can not be substituted to the creditor's rights, is a proposition too plain and well settled to argue.

The contest here, however, is not between a surety and his principal; but a party is seeking to subject the land of a vendee to re-imburse himself for the payment of a debt of the vendor that he never was legally liable to pay as surety or otherwise.

If he could not pay the debt after being released as surety by operation of law, and look to the principal as was held in the case of Spillman & Duff v. Smith, it would seem reasonable that he should not be permitted to re-imburse himself out of the land of a purchaser for the payment of a debt of another that he was never bound for at all.

Whether the vendee in such a case has or not been benefited to the extent of the payment made is not a material question. He may or may not have had sufficient security or indemnity against a breach of contract by his vendor. However, whether he had or not, it is sufficient to relieve his land from a lien in such case that the party asserting it occupies the attitude of a mere stranger or volunteer.

Upon the cross-appeal of Lee from the judgment in favor of Hill v. Greenwell various questions are presented:

1. It appears that after he purchased the land Lee paid to Hays a considerable amount of the purchase money, which the latter as sheriff paid into the State Treasury in part discharge of his revenue bond for 1880, and got credit therefor. Inasmuch as the money paid by Lee was accepted and so appropriated by the sheriff, and the sureties in the bond were to that extent relieved from responsibility, Lee is entitled at least to share *pro rata* with them in the proceeds of the sale of the land. But he is not entitled to priority. For the lien in favor of the Common-wealth, to which the sureties are entitled by substi-tution, already existed when he made the payment to Hays.

2. As Lee had no notice at the time he made the improvements on the land that Hays had defaulted as sheriff, and they are shown to have been necessary and made in good faith, we think he should be re-im-bursed therefor out of the proceeds of the sale to the extent they be shown to have increased the vendible value of the land before appellees Hill and Green-well are paid.

3. It appears that, included in the amount with which Hays was charged as sheriff by the Common-wealth on account of revenue collected by him for the year 1880 was the sum of $154.28 taxes assessed and collected from negroes in pursuance of an act, entitled "An act to establish a uniform system of common schools for the colored children of this Com-monwealth," approved February 23, 1874.

If that act be repugnant to the Constitution of the United States the sheriff was not authorized to collect

any money in pursuance of it, nor required, after he did collect, to pay it into the State Treasury, because the Commonwealth of Kentucky was not entitled to it, and having no right to it, the Commonwealth held no lien therefor which the sureties of the sheriff could by substitution enforce against the land of Lee.

It has been held by the Supreme Court of the United States that discriminating legislation by a State against any class of persons, or against persons of a particular race or nation, in whatever form it may be expressed, deprives such class of persons, or persons of such particular race or nation, of the equal protection of the laws, and is prohibited by the fourteenth amendment to the Constitution.

By section 1, article 11, of the State Constitution, the "Common School Fund" therein designated, together with any sum which may be raised in the State by taxation or otherwise for purposes of education, shall be held inviolate for the purpose of sustaining a system of common schools.

If the rule adopted by the Supreme Court in all other cases involving the construction of the fourteenth amendment to the Constitution be applied in the matter of the common school system of this State, it follows that State taxation for purposes of education should be provided for by general laws applicable to all classes and races alike, and that all the children of the State are entitled to an equal share of the proceeds of the "Common School Fund," and of all State taxation for purposes of education.

The object of the act in question, as declared therein, is to create a uniform system of common

schools for the education of the colored children of the State; and the fund for that purpose is provided for by taxation upon the property and persons of the negro race exclusively.

It was obviously the intention of the Legislature, and such is the proper construction of the act, to exclude the negro children of the State from any share of the proceeds of the "Common School Fund" set apart by the Constitution, as well as from the annual tax levied under general laws on the property of white persons for school purposes, and to give them the benefit of only the fund provided for in the special act. In this respect, as well as regards the partial and discriminating taxation provided for, the act is, in our opinion, in violation of the fourteenth amendment to the Constitution of the United States, as interpreted by the Supreme Court.

Wherefore, the judgment is affirmed on the appeal of Dawson, and reversed on the cross-appeal of Lee, and cause remanded for further proceedings consistent with this opinion.