DAVID M. KOEHLER, Appellant, *v.* JOSEPH HUGHES, Respondent, Impleaded with HENRY HUGHES.

148  507
149  213

148  507
150  358

148  507
157  104

148  507
158  596

148  507
f163  223
j163  519

148  507
j165  407

1. APPEAL — OPINIONS OF COURTS BELOW. Opinions of courts form no part of the record, and statements therein as to what the courts below did or did not pass upon cannot be considered by the Court of Appeals, unless the judgment appealed from so refers to the opinion as to make it a part of the record.

2. APPEAL — RECORD NOT AFFECTED BY OPINIONS. When a record, on appeal to the Court of Appeals, contains proposed findings, marked "found" or "refused," respectively, without any statement of the ground or reason, followed by an order and judgment of unqualified affirmance by the General Term, containing no reference to any opinion, the state of the case is not affected by the fact that an opinion of the trial judge states that he refused certain findings because he deemed them immaterial, and the opinion of the General Term states that, owing to a defective certificate to the case, as settled, it was precluded from reviewing the questions of fact.

3. APPEAL — DEFECTIVE RECORD. The power of the Court of Appeals to review is limited to such questions as appear in the record, and where the record fails to show all that was done in the court below which is material to the appeal a motion should be made to correct the record so as to cause the essential facts to appear.

4. FINDINGS. Where, upon the evidence in a case, part of a finding requested is true, and another part has no evidence to support it, the trial court is justified in refusing the whole request.

5. REFUSAL TO FIND. Error cannot be founded upon a refusal to find, unless it appears, not only that evidence was given proving the fact, but, also, that it was uncontroverted.

6. APPEAL — CONSIDERATION OF FACTS. No fact can be considered by the Court of Appeals for the purpose of reversing a judgment unless it appears in the findings or is requested to be found upon uncontroverted evidence.

7. SUBROGATION — VOLUNTEER. A mere volunteer or intermeddler cannot procure subrogation to the rights of another merely because he has paid a debt or discharged an obligation for which that person was responsible; but to entitle one to subrogation, he or his property must have been in some way lawfully answerable for the claim paid.

8. SUBROGATION — SUPPOSED INTEREST. As a general rule a supposed interest in property claimed to have been protected by a payment is not enough to support a claim to subrogation.

9. SUBROGATION — VOLUNTARY PAYMENT. Where a person, in order to protect an alleged undivided interest in premises claimed to be held in common, redeems them from tax sales and brings an action against his alleged

co-tenant, who claims to own the premises as an entirety and who has acquired the rights of the purchasers at the sales, to be subrogated to such rights to the full amount paid by him, and fails to prove his title, he has no interest to protect; his payment is deemed to have been voluntary, and his complaint is properly dismissed.

10. DEED — ACCEPTANCE. The acceptance of a deed by the grantee thereof is as necessary to a change of title as its delivery.

11. DEED — DELIVERY — EVIDENCE. Where a deed is shown to have been executed two years before the death of the grantee named therein, the fact that it was recorded after his death is of slight importance upon the question of delivery in a case where its custody during the interval is not shown and where it does not appear by whom it was recorded.

12. ACCEPTANCE OF DEED — CONFLICT OF EVIDENCE. A conflict in the evidence, relied upon as showing a delivery and acceptance of a deed executed before, but not recorded until after the death of the grantee, is raised by testimony to the effect that if the deed was delivered as claimed the grantee became the landlord of a tenant of the premises, who thereafter attorned to the holder of an adverse title in the grantee's presence and with his implied consent.

Reported below, 73 Hun, 167.

(Argued January 15, 1896; decided February 18, 1896.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made November 20, 1893, which affirmed a judgment entered upon a decision of the court on trial at Special Term dismissing plaintiff's complaint on the merits as against the respondent, Joseph Hughes.

This was an action to obtain the subrogation of the plaintiff to the rights of a purchaser at certain sales for the non-payment of taxes upon real estate alleged to belong to the parties as tenants in common.

It is alleged in the complaint that the defendant Henry Hughes, being seized in fee and in possession of an undivided eighth of the premises in question, situated in the city of New York, gave a mortgage upon the same to the plaintiff to secure loans then made and others to be made; that, at the same time, the defendant Joseph Hughes owned an undivided interest in said premises; that afterward, and on September 11th, 1889, as well as on September 26th, 1890, the plaintiff redeemed the premises from certain tax

sales theretofore made by the payment of the required amounts to the clerk of arrears; that thereafter said Henry Hughes conveyed his interest in the premises to the plaintiff as a further security to the said loans; that on September 25th, 1891, the defendant Joseph Hughes, who was the purchaser at one of the tax sales, and the assignee of the purchaser at the other, acquired all the outstanding interests in the premises except said undivided eighth so belonging to Henry Hughes and the plaintiff, with full knowledge of all the equities. The plaintiff demanded that he be subrogated to the rights of the said purchasers at the tax sales to the full amount paid by him, with interest thereon; that the same be declared a lien upon the premises, and that the shares of the defendants be sold to pay the same. There was neither allegation nor proof of any request to redeem made of the plaintiff by either defendant, or request to contribute made by the plaintiff of either defendant. Henry Hughes made no defense, and the answer of Joseph Hughes was, in substance, a general denial, except that he admitted his own title.

The trial court found that the plaintiff made said payments to the clerk of arrears voluntarily, and dismissed the complaint upon the merits, with costs. From the judgment of affirmance by the General Term this appeal is brought.

*David McClure* and *Charles Goldzier* for appellant.

*Edward W. S. Johnston* for respondent.

VANN, J. Several questions of practice require examination in this case before we can consider the appeal upon the merits.

The learned General Term states in its opinion that, owing to a defective certificate to the case, as settled, it was precluded from reviewing the questions of fact.

The learned trial judge states in his opinion that he had refused findings in favor of or against the respective contentions of the parties as to whether the plaintiff's grantor had,

or had not, any interest in the property involved, because he deemed the fact immaterial.

These opinions form no part of the record and the statements appearing therein, as to what the respective courts did or did not pass upon, cannot be considered, unless the judgment appealed from so refers to the opinion as to make it a part of the record. (*Dibble* v. *Dimick*, 143 N. Y. 549, 553 ; *Williams* v. *D., L. & W. R. R. Co.*, 127 N. Y. 643, 646; *Tolman* v. *Syracuse, B. & N. Y. R. R. Co.*, 92 N. Y. 353, 356.) Neither the judgment of the General Term, nor the order upon which it was based, refer to the opinion, and the adjudication is general in form, reciting the judgment of the Special Term and affirming " it in all respects."

The proposed findings presented by the plaintiff to the trial judge, under the practice that prevailed at the time, were each marked in the usual way, as " found " or " refused," respectively, without any statement of the ground or reason. Nothing appears in the record itself to show that the action of the General or the Special Term was other than as thus stated, or in any way explaining such action or setting forth the reason therefor, so as to make it appear that the facts were not reviewed by the appellate court, or that certain findings were marked " refused " because deemed immaterial by the trial court.

Our power to review, according to the practice that has prevailed for many years, is limited to such questions as appear in the record. When the record fails to show all that was done by the court below that is material to be spread before the appellate court to enable it to properly review the case, a motion should be made to so correct it as to cause the essential facts to appear, so that the rights of all concerned may be adequately protected. It is just as important that the case should properly show the facts upon which error is predicated as it is to take an appeal.

Confining ourselves to the record, as thus explained, the first question open to review is whether the plaintiff was shown to have any interest in the premises in question upon which a

decree of subrogation could be based. A mere volunteer or intermeddler will not be substituted in the place of a person whose rights he seeks to acquire, simply because he has paid a debt, or discharged an obligation, for which that person was responsible. One cannot ask for subrogation with success, unless either he or his property was in some way lawfully answerable for the claim paid. As was said by Chancellor WALWORTH in *Sanford* v. *McLean* (3 Paige, 117, 122), " it is only in the cases where the person advancing the money to pay the debt of a third party, stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor, as a matter of course, without any agreement to that effect. In other cases the demand of a creditor which is paid with the money of a third person, without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished."

The plaintiff was not a surety, nor did he redeem from the tax sales upon request, or under any agreement, but he alleges that he made the payments in order to protect an undivided eighth interest that he claimed in the premises covered by the taxes, but which the defendant Joseph Hughes claimed to own as an entirety. The trial court found that he paid as a volunteer and did not find that he had any interest in the property. The only requests presented by the plaintiff for findings upon the subject were the following, viz.: " I. That prior to and at the time of his death, William P. Powers was the owner of the premises described in the complaint. II. That under the last will and testament of William P. Powers, duly proved, William Hughes and Joseph Hughes as devisees of the said William P. Powers became the owners of the said premises as tenants in common. III. That thereafter William Hughes died intestate, and Henry Hughes, Joseph Hughes, Susan Reardon, William Hughes and Mary Adams as his heirs at law succeeded to the ownership of his share of the property. IV. That thereafter the defendant Henry Hughes, being indebted to the plaintiff, on the 10th day of

December, 1889, duly conveyed to him all his right, title and interest in the said premises, as security for such indebtedness."

The trial judge, as appears by the record, refused to find each of these requests, and the plaintiff, having duly excepted, now claims that these proposed findings were so conclusively proved by uncontradicted evidence that the refusal to find as requested was error in law. (*Livingston* v. *M. E. R. Co.*, 138 N. Y. 76.) While the record shows us a deed from Henry Hughes to the plaintiff, and there is evidence tending to show that at the date thereof the grantor was indebted to the grantee, there was nothing to connect the debt with the deed, which is silent upon the subject. There was no evidence tending to show that the deed was given "as security for such indebtedness." The trial judge was justified in refusing to make the fourth proposed finding, because there was no evidence to support a part of it, and he was not obliged to find anything that was untrue, even if it was immaterial. Although a part was true, the court was not bound to analyze it, and, passing upon its several parts separately, find what was true and reject what was false, but could properly refuse the whole request because a part was not true, so far as appeared from the evidence. (*Davis* v. *Leopold*, 87 N. Y. 620.)

The object of the other proposed findings, above quoted, was to show that title to said premises passed from William P. Powers through several intermediate owners to plaintiff's grantor. This was necessary in order to show that plaintiff had an interest to protect, for a supposed interest is not enough to support a claim to subrogation unless under peculiar circumstances. (*Dawson* v. *Lee*, 83 Ky. 49; *Bancroft* v. *Abbott*, 3 Allen [Mass.], 524; *Randolph* v. *Randolph*, 3 Rand. [Va.] 490.)

The title to these premises presents a curious history. Starting in November, 1874, when it was vested in said Powers, it passed by proper conveyances to Lewis Johnston and from him, through the wife of said Powers as intermediate grantee to Catherine Barrett, who, on May 3rd, 1875, pur-

ported to convey to said Powers, by a deed acknowledged on that day, but not recorded until November 6th, 1877, or three days after Powers' death. On May 20th, 1875, Catherine Barrett gave another deed of the same premises, reciting the same consideration of $7,000, to Bridget Barrett, and this deed was at once recorded. July 29th, 1891, she gave a third deed, running to defendant Joseph Hughes, who had in the meantime acquired the title of the heirs of Bridget Barrett, and, if her title was good, he owns the entire premises, and the plaintiff has no interest therein. As the deed to Powers was not recorded when he died, the position is taken that there is no proof of a delivery to him. (*Fisher* v. *Hall*, 41 N. Y. 416.) It does not appear by whose authority it was placed upon record nor in whose custody it was in the meantime. Aside from the deed itself there is no evidence tending to show a delivery except that Catherine Barrett testified that she remembered "making a deed of the premises at one time to William Powers in 1875." After stating that she also remembered signing a deed to Bridget Barrett, but did not know what it was, she added, "I had made a deed to Powers before that." This, although somewhat indefinite, bore on the subject of delivery, as the witness may have meant by "making a deed," both the execution and delivery thereof. The will of Mr. Powers furnishes no aid, as he devised all his real estate, by general terms, without describing it.

On the other hand, evidence was given tending to show that Mr. Powers made no claim to the title' or possession of the premises after the date of the deed to him; that November 4th, 1874, while Lewis Johnston owned the property, he leased it to William Hughes, at an annual rental of $720, for the term of five years, with the privilege of renewing the lease for a further term of ten years, from May 1st, 1880, and that subsequent conveyances were subject to that lease; that May 1st, 1883, William Hughes sub-let to Henry Hughes, who was in possession, under said lease, until April 25th, 1893; that after the date of the conveyance from Catherine Barrett to Powers, William Hughes paid rent under said lease to Bridget

Barrett, in the presence of Mr. Powers, and, apparently, with his consent, on two occasions, as well as on other occasions when he was not present; that in June, 1891, the said Cath-erine Barrett alleged, in a petition to sell the undivided share of two infants, who were heirs at law of Bridget Barrett, that, as such, they were seized of an undivided portion of the premises, and entitled to the possession thereof, and that, March 28th, 1893, Joseph Hughes recovered possession of the premises in an action of ejectment against Henry Hughes.

Thus it appears that there was a conflict in the evidence on the question of delivery and acceptance of the deed to Mr. Powers, and it was, therefore, not incumbent on the trial judge to find in favor of the plaintiff on that issue. (*Stewart* v. *Morss*, 79 N. Y. 629.) Error cannot be founded on a refusal to find, unless it appears not only that evidence was given proving the fact, but also that it was uncontroverted. (*Thompson* v. *Bank of British North America*, 82 N. Y. 1.) The inconsistent acts and statements of the witness relied upon to prove a delivery, presented a question of credibility. As the custody of the deed, during the two years that it remained unrecorded, was not shown, the fact that it was placed on record after the death of the grantee, was of slight import-ance. If the instrument was delivered as claimed by the plaintiff, the grantee became the landlord of the tenant, who attorned to the holder of an adverse title, in his presence and with his implied consent. All the known acts of the sup-posed grantee were inconsistent with an acceptance of the deed by him, and yet acceptance is as essential to the change of title as delivery. (*Jackson ex dem.* v. *Phipps*, 12 Johns. 418; *Church* v. *Gilman*, 15 Wend. 656.)

It is, however, claimed by the plaintiff that he was at least a tenant for years under the deed from Henry Hughes, which operated as an assignment of his sub-lease from William Hughes, and that he thus had an interest to protect, and did not pay as a volunteer. There is neither finding nor request to find upon the subject, and nothing to make it the ground of relief on this appeal. If the appellant desired to base a

claim of error upon that allegation, it was necessary for him to procure a finding sufficient to present the question, or, after requests made in due form, by an exception to a refusal to find according to the settled practice. No fact can be considered by this court for the purpose of reversing a judgment unless it either appears in the findings or is requested to be found upon uncontroverted evidence. (*Burnap* v. *National Bank*, 96 N. Y. 125, 131.)

So far as the record shows, therefore, the plaintiff paid voluntarily, as the trial court found.

After examining all of the exceptions we find nothing which calls for a reversal of the judgment, which should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.