Spear, J.
At the threshold of the inquiry we are-met with the question as to the admissibility as evidence of the paper denominated “opinion,” and the depositions of the two arbitrators, inasmuch as the entire contention of plaintiff in error rests upon that-testimony. The specific purpose in offering the-“opinion” was to establish the claim of failure on the part of the arbitrators to concur as to a material question of fact necessary to be decided in order to enable the arbitrators to decide the ultimate issue between the parties, and the depositions were offered for that purpose and also to establish the charge of fatal irregularities in the conduct of the arbitrators. The award itself affirms that the hearing was conducted under the pleadings and proofs in the same manner as-though the issues therein were regularly tried in the court of common pleas of Ohio, and the arbitrators heard and determined all questions, and passed upon all questions arising under the pleadings. The effort of plaintiff was to show that the arbitrators did not proceed regularly, and did not determine or agree upon all the issues of fact because they were not unanimous on the question whether the defendant had shown affirmatively that his purchase of the stock was for its full value at the time, or that he had no advantage from his superior knowledge. In other *367 words, the paper embraced the reasons, or mental methods of procedure, given out by the arbitrators, separate from their award, not purporting to be a. part of the award, not referred to in any manner in. the award, and not made in obedience to any duty enjoined by the submission agreement, or the law, or the oaths of the arbitrators, but presumably given out only in response to personal requests of counsel, is to be considered as equal in solemnity and conclusiveness as the award which they are bound by their oaths, and the terms of the agreement of submission, to render ; and the testimony of the arbitrators, given after-their duties had been fully performed, is to be-heard in order to contradict the award, and to demonstrate-that, in divers important particulars, the arbitrators had failed in the performance of their duties. That is. to say, that the arbitrators themselves by the written paper which, as an act of courtesy to. counsel they gave out, and their testimony by deposition, are to be used as witnessés to impeach their’ award.
The law favors the amicable adjustment of difficulties, and arbitration has been favored by the courts, in this state from early times. It is considered that arbitrators are constituted by the parties chancellors,, judges and jurors, having jurisdiction of the law and of the facts. In general the award is final. The reason is obvious. By procurement of the parties whose cause is in court, a tribunal other than that provided by the ordinary processes of law, has been substituted. The very purpose is to reach, in a speedy and inexpensive way, a final disposition of the controversy between them, and to avoid future litigation concerning the same matters. It is in furtherance of this purpose that, by the general rule, the award cannot be overturned by the dissatisfied party. And so the rule *368 is that it cannot be impeached for error; nothing but fraud, in the parties or in the arbitrators, or such manifest mistake as naturally works a fraud, can be alleged to avoid it. Such is the holding in Ormsby v. Bakewell, 7 Ohio, 98. See, also, Rice v. Hassenpflug, 45 Ohio St., 377; Morse on Arbitration, 47, 49, 59, 293, 296, to the effect that courts construe the act of arbitrators with liberality, and with an inclination to support arbitration where substantially regular, and that an award covering the issues, made in good faith upon a full hearing, and in obedience to the submission, is final.
If the efforts of parties to adjust their differences by arbitration are to be encouraged, it would follow that trivial objections should not avail to defeat the purpose, and final effect should be given the award of arbitrators unless substantial grounds appear to the contrary. Arbitrators are not a court, nor in fact a jury, and yet they have attributes strongly resembling both. In reason, therefore, their solemn decisions should not be overturned lightly. The award which they render is intended to be their final judgment on the issues. And, as a reviewing court does not look to the opinion of the lower court for its decision, but to the judgment actually rendered, unless the judgment refers to the opinion so as to make it a part of the record (see Beach v. Sterne, 67 Hun, 341, affirmed in 143 N. Y., 634; Koehler v. Hughes, 148 N. Y., 507; Randall v. Railroad Co., 149 N. Y., 211; Freeman on Judgments, section 2), so the opinion of the arbitrators not in any way made a part of the award, or referred to in the award, would seem to be in like manner- irrelevant. Russell in his work on Arbitration, page 471, speaking of voluntary statements by arbitrators giving an explanation of the *369 grounds of the award, says: “When the arbitrator is willing that the principle of his decision should be reviewed by the courts, he should raise the question by stating a case in his award. If the parties do not, during the reference think fit to ask for a case, and the losing party applies for a statement of the grounds j of his decision afterwards, the courts will not notice ; it.” Citing London Dock Co. v. St. Pauls, 32 L. J. Q. B., 30, which decision fully supports the text. We are of opinion that the paper called “opinion” was not competent evidence. If the proper construction and legal effect of it is that claimed by plaintiff in error, then, there is a flat contradiction between that paper and the award, while if that contention be untenable, and the “opinion” is consistent with the award then the “opinion” was of no consequence in determining the issue before the court. In either view it should not be considered.
But the same point was sought to be made by the testimony of two of the arbitrators. An arbitrator has no privileged standing to exempt him from being called, and it is settled that for some purposes he is a competent witness. It has been held that arbitrators are competent to prove what matters are presented before them, and what claims were or were not included in the award; also as to the time when and the circumstances under which the award was made. Morse on Arbitration, 214. It has been held, also, that he may be called to prove admissions made by the parties other than those for the purpose of bringing peace. Other holdings of like import appear in the books. On the other hand, Mr. Russell, at page 469, cites, without dissent, Shelling v. Farmer, 1 Stra., 646, as holding that “where the award was general and purported to decide all the differences, the court *370 refused to allow the arbitrator to be called to prove that in respect of a claim made before him within the submission, he had refused to award compensation.”
An examination of authorities, those cited by counsel and many others, leads to the conclusion that there is conflict, as between the earlier and the later decisions, with respect to the conclusiveness of an award regular on its face, and that the later decisions incline to hold the rule much more strongly in the support of such awards than many of the old decisions, and to exclude the testimony of arbitrators under circumstances where before such testimony might have been admitted, although there are not wanting decisions of remote date which are in accord with the spirit of the more recent ones. But, be that as it may, it is believed that the weight of modern authority, adjudicating upon common law arbitrations, is against the admissibility of testimony by arbitrators when adduced to impeach their award. Such is the conclusion of Mr. Russell, and many late decisions are cited in support. He says, page 298: “When an award is good on its face, the cases do not all agree in showing how far the courts will allow it to be impeached by extraneous evidence of statements of the arbitrator, showing that he has decided on reasons not tenable in law. As the courts of law are now inclined to hold that awards are not to be impeached for mistakes in-law or fact not apparent on the award, they will, it is apprehended, at the present day in general reject such statements.” And this conclusion seems consonant with reason. As before stated, arbitrators are in a sense jurors. It is remarked by Mr. Russell at page 477 that: “An award for the plaintiff in an action for a nuisance will, in the court of chancery, on proceedings for an injunction to prevent the con *371 tinuance of the nuisance, be regarded as highly as the verdict of a jury establishing the existence of the nuisance.” And if an award stands with as much favor as a verdict of a jury why should it not be surrounded by equal safeguards? We assume it to be now settled, as a general proposition in this state, that jurors cannot be called to impeach their verdict. The principle is distinctly held in Hulet v. Barnett, 10 Ohio, 459, where the ground is well stated by Grimke, J., as follows: “Now if there is any rule which can be considered as completely settled, and which has been framed for the purpose of setting bounds to the discretion of the court, it is that testimony of this kind should not be received. The rule is a most wholesome one, inasmuch as it is founded upon the wisest reasons of public policy. If an inquisition of this kind were to be established over the conduct of the jury, there is no knowing where it would terminate. It would produce a great deal more mischief than it could by possibility prevent. It would degrade the jurors in their own estimation, and in the estimation of the public, and they would soon lose that character of independence which gives value to the institution. The inquiry would not only be impossible in the great majority of instances, but it would work the deepest injury to the administration of justice. In those instances where the misconduct was the greatest, it would never be divulged, because those would be the very cases in which the jurors could not be prevailed upon to implicate themselves; and to permit those of the jury who were not parties to the misconduct complained of, to impeach the behavior of their fellow jurors, would open the door to every species of insinuation, and would detract from that relation of confidence which should *372 be established among the members of the jury. The rule is a wise one which absolutely forbids the admission of such testimony.” See, also, Holman v. Riddle, 8 Ohio St., 384; Farrer v. The State, 2 Ohio St., 54; and Kent v. The State, 42 Ohio St., 426. In these two criminal cases it is sought to engraft exceptions upon the general rule, but the rule itself is not questioned, and the exceptions bear no relation to the present inquiry. As to the rule in other jurisdictions see Graham & Waterman on New Trials, 114; and authorities cited; Baylies on New Trials, 591, and authorities; and Hilliard on New Trials, section 63. Undoubtedly the infrequency of trials before arbitrators as compared with jury trials, renders the matter of less relative importance, but it is a difference of degree and not of kind. The principle is the same. Applying this rule it follows that the depositions of the arbitrators, at least in so far as their statements were sought for the purpose of impeaching the award, were incompetent. If they can be resorted to for any purpose, it is proper to add that they fully establish that the paper called “opinion” was not prepared by reason of any supposed duty to do so, but wholly because personally requested by the counsel, and from motives of courtesy to them, and that the arbitrators did not regard the “opinion” as any part of their award, but did regard the paper marked “award” as the only award and the only decision. The depositions also negative any charge of irregularity in their methods of procedure and in the conduct of their deliberations.
This conclusion makes it unnecessary to consider at length the other branch of the case. But it is not out of place to make brief reference to it. With respect to the claim that the award was void for the rea *373 son that the arbitrators did not agree upon all questions submitted to them, it was the judgment of the circuit court, and of the common pleas as well (which courts took cognizance of the “opinion” and of the depositions), that there being no question of fraud involved in the two questions not determined, and there being a clear way for the conclusion that followed on a question that was assumed favorable to plaintiff, the judgment was reached in a logical manner without the two questions on which the arbitrators did not agree being determined. That is, the questions to be found add nothing to the clear right the plaintiff had independent of them, viz.: the right of rescission. Not finding these facts would, therefore, not be prejudicial to the plaintiff, as he got all the advantages under the facts assumed, that he could have had if the facts had been found.
We see no reason to doubt the correctness of these conclusions, applying to them the rules either of logic or of law.

Judgment affirmed.

Burket, C. J., Davis, Shauck, Price and Crew, JJ., concur.