OPINION OF THE COURT
Phillip R. Rumsey, J.
Plaintiff and defendant James Robertson are the sons of Mary *496 Robertson, who also had a daughter. In February 2007, Mary pledged 2,307 shares of AT&T stock to Chemung Canal Trust Company (CCTC) as collateral for a loan it made to defendant Upstate Millwork, Inc. (UMI), a business owned and operated by James, who also personally guaranteed the loan. Mary died January 2, 2008, leaving a will, executed in 2006, that was admitted to probate by which she specifically bequeathed all AT&T stock to plaintiff. UMI was initially successful, but suffered a downturn in business that resulted in restructuring of various loans it had received from CCTC. UMI was able to pay all of its loans with CCTC in full, except for one, before it discontinued operations in March 2010. James endeavored to make regular monthly payments on the remaining loan. Notwithstanding defendants’ assertions to the contrary, the loan was in default in May 2010 (see affirmation of David W. Feeney II dated Aug. 4, 2014 [Feeney affirmation], exhibit 28 [email from Robert Pichette, a CCTC employee, to Joseph Perry, also a CCTC employee, dated May 20, 2014 advising that “the loan is past due”]; see also aff of David Robertson, sworn to Aug. 11, 2014, ¶¶ 8, 14). As a result, on May 25, 2010, the executor of Mary’s estate authorized CCTC to sell the AT&T stock that was subject to the pledge agreement and apply the proceeds toward payment of UMI’s loan (see Feeney affirmation ¶ 29). The stock was sold, resulting in payment of the UMI loan on or about May 28, 2010, in the amount of $40,019.33, and distribution of the remaining proceeds of $13,319.03 to the executor (id., exhibits 30-31). Plaintiff commenced this action, asserting that he is equitably subrogated to the rights of CCTC, and seeking judgment for the amount applied to repayment of the loan, plus interest and attorney’s fees. Defendants now move for summary judgment dismissing the complaint, and plaintiff cross-moves for judgment granting the relief requested in the complaint.
Defendants’ primary argument is that plaintiff may not be subrogated to the rights of CCTC because the executor acted voluntarily in applying the AT&T stock to repayment of UMI’s debt. The doctrine of equitable subrogation is:
“ ‘Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder.’ ” (Elwood v Hoffman, 61 *497 AD3d 1073, 1075 [2009], quoting King v Pelkofski, 20 NY2d 326, 333 [1967]; see also Chemical Bank v Meltzer, 93 NY2d 296, 304 [1999]; Gerseta Corp. v Equitable Trust Co. of N.Y., 241 NY 418, 425-426 [1926].)
However, as argued by defendants and conceded by plaintiff, a person who voluntarily pays the debt of another that he himself has no legal obligation to pay is a volunteer who may not invoke the doctrine of equitable subrogation (see Koehler v Hughes, 148 NY 507 [1896]). In support of their motion, defendants assert that plaintiff is a volunteer because the executor of Mary’s estate voluntarily authorized liquidation without requiring CCTC to accelerate the loan and foreclose its security interest in the AT&T shares. Their argument is unavailing. It is undisputed that the AT&T shares were pledged to CCTC as security for repayment of the loan for which UMI and James were both liable. Moreover, notwithstanding James’s efforts to repay all of UMI’s indebtedness to CCTC without resort to the AT&T stock pledged as collateral, defendants’ own proof shows that the UMI loan was in default for past due payment prior to sale of the stock in May 2010 (see Feeney affirmation, exhibit 28). The fact that the executor authorized liquidation of the stock upon a loan default without requiring CCTC to formally accelerate the loan and undertake the process of foreclosing its interest on the collateral does not serve to make plaintiff a volunteer, because it does not change the fact that plaintiffs property was legally pledged to repayment of that debt.[1]
Thus, the undisputed facts show that plaintiff’s claim fits squarely into the doctrine of equitable subrogation: Plaintiffs property—the AT&T stock—was pledged to CCTC as collateral for repayment of UMI’s loan and was properly used upon a default in repayment of that loan to discharge an obligation owed to CCTC by defendants. Moreover, based on the testamentary scheme expressed in Mary’s will, defendants would be unjustly enriched if plaintiffs equitable subrogation claim was denied. Before she pledged the AT&T stock as collateral in 2007, Mary had executed a will that was admitted to probate upon her death in which she chose not to treat her children equally, and in which she specifically bequeathed the AT&T stock to plaintiff. Had Mary been living when the AT&T stock was used *498 to pay defendants’ debt, she plainly would have had the right to be subrogated to CCTC’s rights. Thus, use of the AT&T stock to satisfy defendants’ debt would also change Mary’s testamentary scheme, unjustly enriching defendants at plaintiffs expense.
Upon subrogation, a party is entitled to enforce the terms of any agreements between the original obligor and obligee. In this case, the applicable loan documents provide for payment of interest and for the lender to recover attorney’s fees incurred to collect the debt. Although CCTC did not incur any attorney’s fees in collection of its debt, upon subrogation, plaintiff may independently enforce the terms of the loan agreements. Accordingly, plaintiff is entitled to recover attorney’s fees that he has incurred to enforce his right to recover payment from defendants. Thus, plaintiff is entitled to recover interest on the unpaid principal of $39,285.10 at the contract rate of seven percent per annum from May 28, 2010 to entry of judgment, and attorney’s fees incurred in this action, in an amount to be determined by the court. Plaintiff may submit, on notice, by January 5, 2015, proof of the attorney’s fees and disbursements incurred in the present action. Any answer thereto must be filed and served by January 26, 2015.
Based on the foregoing, defendants’ motion is denied, and plaintiffs cross motion is granted.[2] Plaintiff is entitled to entry of judgment against defendants for $40,019.33, plus interest through November 13, 2014 of $12,272.40, plus interest at the daily rate of $7.53 from November 14, 2014 through entry of judgment, plus attorney’s fees and disbursements, in such amounts as may be hereinafter awarded by the court, plus the costs of the action of $200 (see CPLR 8101, 8201).

. As defendants concede, title to the AT&T stock passed to plaintiff as of the date of Mary’s death, because it was specifically bequeathed to him (see supplemental submission of defendants dated Aug. 21, 2014 at 3).

. Defendants’ affirmative defenses and remaining arguments have been considered and found to lack merit.