[599 NYS2d 347]

NATIONAL UNION FIRE INSURANCE COMPANY, Respondent, v RANGER INSURANCE COMPANY, Appellant and Third-Party Plaintiff-Appellant. ALEXANDER & ALEXANDER OF NEW YORK, INC., Third-Party Defendant-Appellant.

Fourth Department, May 28, 1993

## APPEARANCES OF COUNSEL

*Sugarman, Wallace, Manheim & Schoenwald,* Syracuse *(Timothy Perry* of counsel), for appellant.

*Lustig & Brown,* Buffalo *(John Ziegler* of counsel), for third-party defendant-appellant.

*Damon & Morey,* Buffalo *(Anthony J. Colucci, III,* and *Kathleen Kaczor* of counsel), for respondent.

## OPINION OF THE COURT

LAWTON, J.

El Kam Realty Co. (El Kam) had liability insurance issued by both National Union Fire Insurance Company (National) and Ranger Insurance Company (Ranger). On or about December 9, 1985, James Brick fell at El Kam's shopping center. He brought suit against El Kam, which turned the summons and complaint over to its agent or broker, Alexander & Alexander. That agent turned the pleadings over to National, with the request that National protect its insured's interest. National proceeded to defend El Kam's interest in the lawsuit. On the eve of trial, National discovered that its policy of insurance contained an endorsement that stated, "it is understood and agreed that this policy excludes coverage for shopping centers". That limitation was not contained in Ranger's policy and it is undisputed that its policy provided personal injury liability coverage for this accident. On May 12, 1989, the trial date, National authorized a settlement offer to Brick in the amount of $100,000, which was accepted. National, upon payment of the settlement monies, made a claim against Ranger for reimbursement and, upon the denial of the claim, commenced the present action seeking a determination that it is equitably subrogated to the rights of El Kam against Ranger and therefore entitled to indemnification from and judgment against Ranger for the full amount expended in Brick's action against El Kam. Supreme Court denied Ranger's motion for summary judgment dismissing the complaint.

Ranger contends on appeal that its motion should have been granted on two grounds: (1) that National is a volunteer to whom it owes no duty; and (2) that it is not liable under its policy of insurance by reason of the failure of its insured to give timely notice of the occurrence that led to the claim. Supreme Court, in denying Ranger's motion for summary judgment, held as a matter of law that National was not a volunteer, and that the issue of late notice raised questions of fact that could be decided only at a trial. We agree with Supreme Court with respect to the issue of late notice, but disagree that National was not a volunteer. Because National's status as a volunteer is determinative, we will limit our discussion to that issue.

At the time the payment was made, National was not acting under any mistake of fact or law and makes no such claim in this action (see, e.g., *The Thrift v Michaelis*, 259 NY 302; *Barnes v Mott*, 64 NY 397; *In re Wilcox's Estate*, 118 NYS 254; 23 NY Jur 2d, Contribution, Indemnity, and Subrogation, § 34, at 54-55). Because National was not obligated under its policy of insurance, it became a volunteer with no right to recover the monies it paid on behalf of its insured. It is well settled that "[a] mere volunteer or intermeddler will not be substituted in the place of a person whose rights he seeks to acquire, simply because he has paid a debt, or discharged an obligation, for which that person was responsible" *(Koehler v Hughes*, 148 NY 507, 511). This principle has been applied to insurance carriers. "[A]n insurer which pays a loss for which it is not liable thereby becomes a mere volunteer, and is not entitled to subrogation, in the absence of an agreement therefor" (16 Couch, Insurance 2d § 61:55, at 137-138 [rev ed]; *see also, Prindle v Rockland Tr. Corp.*, 263 App Div 873, *lv denied* 263 App Div 1010). "One cannot ask for subrogation with success, unless either he or his property was in some way lawfully answerable for the claim paid" *(Koehler v Hughes, supra*, at 511; *see also, Gerseta Corp. v Equitable Trust Co.*, 241 NY 418, 425-426 [equitable subrogation arises "so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability"]; *Medical Malpractice Ins. Assn. v Medical Liab. Mut. Ins. Co.*, 86 AD2d 476, 479-480, *lv denied* 57 NY2d 604).

National argues that, because it had undertaken the defense of the action, it could not withdraw that defense at the time of trial without being subject to a claim of bad faith (see, *Schiff*

*Assocs. v Flack,* 51 NY2d 692; *U.S. Liab. Ins. Co. v Staten Is. Hosp.,* 162 AD2d 445). Because it became legally obligated, National argues that it cannot be considered a volunteer, citing *Medical Malpractice Ins. Assn. v Medical Liab. Mut. Ins. Co. (supra).* The problem with that contention is that the mistakes that led to the payment were all made by National itself. National's mistakes and negligence gave rise to its obligations to pay this loss and, therefore, it cannot be heard to argue that, because it became legally obligated to make the payment, it was not voluntary. National's own negligence cannot create rights against a third party.

Moreover, National cannot recover against Ranger as an equitable subrogee because Ranger did not cause El Kam's loss. New York adheres to the rule that "the doctrine of subrogation does not extend * * * to those cases in which the insured by reason of the existence of some independent contract has collateral rights against parties who did not cause the loss" (71 NY Jur 2d, Insurance, § 1904, at 356-357; *cf.,* Couch, *op. cit.,* § 61:147, at 212). Indeed, the Court of Appeals recently stated, "[w]hile arguably a compensated insurer or surety should in fairness bear the loss where the third party's liability is solely contractual and not based on fault [citations omitted], such a result seems neither fair nor judicious when the loss has been caused by the third party's tortious conduct" *(Federal Ins. Co. v Andersen & Co.,* 75 NY2d 366, 377; *see also, Alexandra Rest. v New Hampshire Ins. Co.,* 272 App Div 346, *lv granted* 272 App Div 996, *affd* 297 NY 858). Because National attempts to assert a right to equitable subrogation against Ranger, a third party that was not negligent and did not cause El Kam's loss, based solely on Ranger's contractual liability, that assertion falls squarely within the prohibition.

Likewise, there is no basis for a finding of indemnity based upon equitable estoppel. Nothing that Ranger did was relied upon by National before it made payment to settle the claim against their joint insured. There is no basis for invoking the aid of equity in this case. National is being called upon only to pay for the mistakes it made, and not for anyone else's. It is that fact that distinguishes this case from *Mid-City Shopping Ctr. v Consolidated Mut. Ins. Co.* (35 AD2d 1053), wherein the nonliable insurance company paid the loss only after the insurance company whose policy covered the loss allegedly wrongfully disclaimed coverage and left its insured unprotected.

If National had waived its exclusion of coverage and pro-

vided coverage under its policy, then it might have had a claim against Ranger for contribution under the coinsurance clauses of each policy. That, however did not occur. Rather, National has consistently taken the position that it was not obligated under its policy, and that it is entitled to recover from Ranger the entire amount paid by it, thereby establishing that it is a volunteer. Accordingly, Ranger's motion for summary judgment should be granted and the complaint dismissed.

PINE, J. P., BALIO, FALLON and DAVIS, JJ., concur.

Order unanimously reversed, on the law, without costs, motion granted and complaint dismissed.