■ DOMINION INSURANCE COMPANY, LTD., et al., Appellants, v STATE OF NEW YORK, Respondent. [760 NYS2d 248] —Peters, J.

Appeal from an order of the Court of Claims (Read, P.J.), entered December 19, 2001, which granted defendant's cross motion for summary judgment dismissing the claim.

Arthur Rose was employed by defendant as a physician and associate professor at the State University of New York Downstate Medical Center (hereinafter SUNY-Downstate). In addition to teaching, Rose maintained a clinical practice at that location where he met with then three-year-old Chana Fink in 1978. After Fink's admission to the hospital at SUNY-Downstate and upon completion of various neurological tests, Rose changed his original diagnosis of peripheral facial nerve palsy to that of a brain tumor.

Fink and her parents commenced a negligence action against Rose, SUNY-Downstate and three other physicians as a result of this misdiagnosis. Rose sought legal representation pursuant to the provisions of Public Officers Law § 17, which defendant denied by contending that Rose had treated Fink as a private patient and not in his capacity as an employee of defendant. However, SUNY-Downstate had purchased a malpractice insurance policy from Great Atlantic Insurance Company (hereinafter Great Atlantic), which provided $500,000 worth of primary coverage to SUNY-Downstate and its physicians. As Great Atlantic was being liquidated at such time, a defense was provided by the Liquidation Bureau of the Department of Insurance. Two excess malpractice insurance policies had also been purchased by SUNY-Downstate for itself and its physicians. One provided excess coverage of $500,000 over the amount provided by the Great Atlantic policy, while the second provided $5,000,000 in excess of the other two. Both of these excess policies were "London market subscription" policies.*

Fink's medical malpractice action was ultimately settled for a total of $3.5 million, $2 million of which was attributable to the claim against Rose. By the time the settlement was reached, Great Atlantic had only $51,914 to satisfy its obligation under the primary policy, thereby triggering the two excess insurance policies. Although various insurance companies subscribed to different proportionate shares of the first excess policy, with Bercanus Insurance Company assuming 75% of the whole, at the time of settlement it was insolvent, leaving only 25% of the $500,000 excess policy available. Under the second excess policy, proportionate shares held by insurance

---

* Wholly separate insurance companies subscribe to several shares of the policies in exchange for a percentage of the premiums; they are severally liable for a determined percentage of a loss yet have no joint liability.

companies which were now insolvent relegated only 40% of that policy available.

In an attempt to protect Rose from personal liability and avoid a potential bad faith cause of action, claimants, the solvent insurance companies holding a proportionate share under the excess policies, agreed to pay their individual shares, as well as the shares of the insolvent subscribers, in exchange for the right to pursue Rose's claim against defendant. Notably, even with such payment, the amount did not exceed the outer limits of the excess policies.

Claimants brought the instant subrogation action seeking to recover the amounts paid in excess of their respective shares. They moved and defendant cross-moved for summary judgment, both focusing on the issue of whether Rose was acting within the scope of his employment so that recovery could be claimed pursuant to Public Officers Law § 17. The Court of Claims, however, granted defendant's cross motion by finding that claimants' subrogation claim was barred by the antisubrogation rule and that claimants voluntarily made the payments in excess of their proportionate shares. These findings were reaffirmed on reargument, and claimants appeal.

Claimants' contention that they fall within the exception to the antisubrogation rule since they paid more than their individual proportionate shares under the two excess policies must fail. Subrogation is an equitable doctrine which "entitles an insurer to 'stand in the shoes' of its insured to seek indemnification from third parties whose wrongdoing has caused a loss for which the insurer is bound to reimburse" (*North Star Reins. Corp. v Continental Ins. Co.,* 82 NY2d 281, 294 [1993]; *see Layaw v Maguire Ford Lincoln-Mercury,* 219 AD2d 73, 75 [1996]). A third party is "one to whom the insurer owes no duty under the insurance policy through which its loss was incurred" (*Pennsylvania Gen. Ins. Co. v Austin Powder Co.,* 68 NY2d 465, 471 [1986]). The emergence of the antisubrogation rule, the exception to the right of subrogation, precludes an insurer from "be[ing] subrogated to a claim against its own insured, at least when the claim arises from an incident for which the insurer's policy covers that insured" (*id.* at 471; *see North Star Reins. Corp. v Continental Ins. Co., supra* at 294).

Here, it is undisputed that defendant, through SUNY-Downstate, was the insured under both policies and that one of the risks covered by those policies was the risk of malpractice by a SUNY-Downstate physician. Since claimants are seeking subrogation from defendant—one of their own insured—for a claim arising from the very risk for which they provided cover-

age, we find that the Court of Claims correctly determined that the claim is barred by the antisubrogation rule (*see Pennsylvania Gen. Ins. Co. v Austin Powder Co., supra* at 471-472), and that no exception thereto applies.

Nor do we find any equitable considerations which would occasion a departure from this determination, including the contention that the payments were made to obviate a potential bad faith claim. With claimants not " 'lawfully answerable for the claim paid' " (*National Union Fire Ins. Co. v Ranger Ins. Co.,* 190 AD2d 395, 397 [1993], quoting *Koehler v Hughes,* 148 NY 507, 511 [1896]), they had no right to recovery.

Crew III, J.P., Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.