07-4443-cv
General Star v. Universal Fabricators, Inc., et al.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: September 3, 2008        Decided: November 5, 2009
                Amended:  December 28, 2009)

Docket No. 07-4443-cv

--------------------------------------

GENERAL STAR NATIONAL INSURANCE CO.,

Defendant-Cross-Defendant-Cross-Claimant-Appellant,

- v -

UNIVERSAL FABRICATORS, INC., MUTUAL MARINE OFFICE INC., NEW YORK
MARINE AND GENERAL INSURANCE COMPANY,

Defendants-Cross-Defendants-Cross-Claimants-Appellees,

AMERICAN ALTERNATIVE INSURANCE CORPORATION,

Defendant-Cross-Defendant-Counter-Claimant,

NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA, A1 MARINE
ADJUSTERS, INC., NAVIGATORS INSURANCE SERVICES OF TEXAS, INC.,
MARINE OFFICE OF AMERICA CORPORATION,

Plaintiffs-Counter-Defendants.

--------------------------------------

Before:   SACK and KATZMANN, Circuit Judges, and RAKOFF, District
          Judge.[*]

          Appeal from a judgment of the United States District
Court for the Southern District of New York (Shira A. Scheindlin,
Judge).  The district court granted summary judgment against the
appellant, General Star National Insurance Co., ruling that it

---

[*] The Honorable Jed S. Rakoff, United States District Judge
for the Southern District of New York, sitting by designation.

was bound by the terms of an excess insurance policy it had issued to contribute to the satisfaction of a state-court judgment of liability in a personal injury action against two entities for whom the insured had been a contractor at the time of the injury. We conclude that the district court erred in deciding that the state-court judgment established legal liability against the insured. We therefore vacate the judgment and remand for the district court to consider in the first instance whether liability was established in some other manner such that an "ultimate net loss" for which General Star was liable pursuant to General Star's insurance policy arose.

Vacated and remanded.

> CHRISTOPHER BRADLEY, Marshall, Conway, Wright & Bradley, P.C. (Michael S. Gollub, Kenneth Mauro, Mauro, Goldberg & Lilling LLP, of counsel), New York, NY, for Defendant-Cross-Defendant-Cross-Claimant-Appellant.

> PATRICK W. BROPHY, McMahon, Martine & Gallagher, LLP, Brooklyn, NY, for Defendants-Cross-Defendants-Cross-Claimants-Appellees.

SACK, Circuit Judge:

Defendant-Cross-Defendant-Cross-Claimant-Appellant General Star National Insurance Co. ("General Star") appeals from a memorandum opinion and order dated September 14, 2007, by the United States District Court for the Southern District of New York (Shira A. Scheindlin, Judge) granting summary judgment for Defendants-Cross-Defendants-Cross-Claimants-Appellees, the New York Marine and General Insurance Company and Mutual Marine

2

Office, Inc. (together, "Mutual Marine").  The question presented on appeal is whether General Star, an excess insurer, is required to reimburse Mutual Marine for the amount Mutual Marine paid above its policy limit to cover a portion of a state-court personal injury judgment.

In answering this question in the affirmative, the district court concluded that a state-court judgment against the owner of and stevedore at the ship terminal where the personal injury occurred -- the City of New York (the "City") and the International Terminal Operating Company ("ITO"), respectively -- constituted an adjudication of liability against General Star's insured, Universal Fabricators, Inc. ("UFI"), a contractor doing work at the time and place of the injury.  UFI was insured by both Mutual Marine for the first million dollars of loss, and General Star for four million dollars above that amount, under General Star National Insurance Company umbrella policy No. NUG-332963C ("GenStar Policy").  Because under the terms of the GenStar Policy, an "adjudication" that established an amount that the insured was legally obligated to pay constituted an "ultimate net loss," which required General Star to reimburse its insured, the district court decided that General Star was obligated to pay Mutual Marine for the amount it had paid above its primary insurance policy limit.

We conclude that the district court erred in deciding that General Star's insured was liable for the amount at issue as a result of the state court personal injury judgment.  Because

3

neither the district court nor the parties addressed in substance the issue of whether General Star's insured was legally liable for some other reason, we vacate the judgment of the district court and remand with instructions for the court to resolve this issue and decide whether a trial with respect thereto is warranted.

**BACKGROUND**

The New York City Passenger Ship Terminal (the "Terminal") is owned by the City and operated in part by ITO. In 1999, ITO retained UFI to perform repair work at the Terminal. The contract between ITO and UFI contained a rider which provided, among other things, that UFI would (a) procure general liability insurance coverage in the amount of five million dollars per occurrence, with the insurance policy naming ITO and the City as additional insureds, and (b) "indemnify, defend and hold harmless" ITO and the City from and against all claims arising from any negligent act or omission by UFI that was related to the repair work. As required by the rider, UFI purchased a primary general liability insurance policy in the amount of one million dollars from Mutual Marine and a secondary excess policy in the amount of four million dollars from General Star.

The GenStar Policy provided that General Star would pay for "ultimate net loss in excess of the retained limit because of bodily injury or property damage to which the policy applies."

4

It also stated that: "Ultimate net loss means the total amount of damages for which the Insured is legally liable.  Ultimate net loss may be established by adjudication, arbitration or a compromise settlement to which [General Star] ha[s] previously agreed in writing."

On February 26, 1999, Ronald Ernish, a UFI employee performing repair work at the Terminal, was seriously injured when he fell from a makeshift scaffold or ladder that collapsed under his weight.  Ernish and his wife brought suit in Supreme Court, New York County, not against UFI, Mr. Ernish's employer -- perhaps because they would have been confined to a workers' compensation claim had they sought to recover from UFI[1] -- but against ITO and the City (the "Ernish lawsuit").  ITO and the City then filed a third-party complaint against UFI seeking indemnification (the "third-party action").

General Star was informed of the Ernish lawsuit and the third-party action against UFI.  After concluding that it was unlikely UFI would be exposed beyond Mutual Marine's million-dollar policy limit, General Star decided to allow Mutual Marine,

---

[1]  See N.Y. Workers' Compensation Law §§ 11, 29; see also, e.g., Fung v. Japan Airlines Co., Ltd., 9 N.Y.3d 351, 357, 880 N.E.2d 845 (2007) ("Workers' Compensation Law §§ 11 and 29(6) restrict an employee from suing his or her employer . . . for an accidental injury sustained in the course of employment."); Pereira v. St. Joseph's Cemetery, 54 A.D.3d 835, 837, 864 N.Y.S.2d 491 (2d Dep't 2008) ("[A]llegations that the employer exposed the employee to a substantial risk of injury have been held insufficient to circumvent the exclusivity of the remedy provided by the Workers' Compensation Law.") (internal quotation marks omitted).

UFI's primary insurer, to defend UFI in the third-party action, and so informed Mutual Marine in two notes dated May 25 and June 1, 2000, respectively. With regard to its conclusion that UFI was unlikely to be exposed beyond Mutual Marine's million-dollar policy limit, General Star instructed Mutual Marine in the first note that "[s]hould future developments lead you to believe otherwise, please notify us immediately."

Before trial began in the Ernish lawsuit against ITO and the City, Mutual Marine's attorneys executed a settlement agreement (the "First Agreement") with both ITO and the City, purportedly on behalf of UFI, settling the third-party claim ITO and the City had asserted against UFI. The First Agreement provided that ITO and the City would discontinue their third-party claim against UFI, and that ITO and the City would pay twenty-five percent and UFI would pay seventy-five percent of whatever amount was ultimately awarded to Ernish against ITO and the City in the Ernish lawsuit.

It is not disputed that Mutual Marine knew of and participated in the First Agreement. General Star, however, neither knew of nor participated in it. And according to UFI and General Star, Mutual Marine's counsel entered into the First Agreement on UFI's behalf without UFI's consent.

The state trial court directed a verdict in the Ernish lawsuit in favor of the plaintiffs against ITO and the City on liability pursuant to N.Y. Labor Law § 240, which provides that "[a]ll contractors and owners and their agents . . . shall cause

6

to be furnished or erected . . . scaffolding . . . which shall be so constructed, placed and operated as to give proper protection to a person so employed" in repairing a building or structure, among other things.  N.Y. Labor Law § 240; see also Ernish v. City of N.Y., 2 A.D.3d 256, 257, 768 N.Y.S.2d 325 (1st Dep't 2003).  A jury, left to decide the amount of damages, returned an award of three million dollars against ITO and the City.  The amount apparently came as something of a surprise to the parties and their insurers.  On appeal to the Appellate Division, the directed verdict was affirmed but the judgment was reduced to $2,175,000 plus interest -- still an amount substantially exceeding the parties' and insurers' initial expectations.  Id.

ITO and the City were insured by the National Union Fire Insurance Company of Louisiana, A1 Marine Adjusters, Inc., the Marine Office of America Corporation, and Navigators Insurance Services of Texas, Inc. (collectively "National Union").  National Union initially paid Ernish twenty-five percent of the judgment to satisfy the obligation of ITO and the City -- the defendants in the Ernish lawsuit -- under the First Agreement.  Mutual Marine, in turn, satisfied -- up to its policy limit of one million dollars plus interest -- part of UFI's three-quarters share of the judgment against ITO and the City under the First Agreement.  $650,584.19 of UFI's three-quarters share under the First Agreement remained unpaid.  The parties looked to General Star to pay that amount under its excess policy, but General Star declined, arguing that neither it nor

7

UFI was bound by the First Agreement, and that it therefore had no liability for payment of any of UFI's 75% share of the judgment, which share had been decided upon in the First Agreement. See, e.g., Letter from General Star to Mutual Marine, at 1 (June 19, 2002) ("What remains clear and indisputable -- in fact Mutual Marine does not even argue to the contrary -- is that neither General Star nor Universal Fabricators ever authorized Mutual Marine to execute the so-called [First Agreement] on their behalf.").

Because the judgment was entered against ITO and the City, their insurer, National Union, then paid the remainder of the judgment. National Union thereupon commenced an action for a declaratory judgment against UFI, Mutual Marine, and General Star to the effect that National Union was due reimbursement for the money it paid in excess of the twenty-five percent share of the Ernish judgment that was apportioned to ITO and the City under the First Agreement. General Star removed the action, which was originally filed in New York County Supreme Court, to the United States District Court for the Southern District of New York on the basis of diversity of citizenship.

After the case was removed, Mutual Marine, UFI, and National Union, entered into two additional settlement agreements. Mutual Marine and UFI entered into a "Settlement and Cooperation Agreement" (the "Second Agreement"), under which Mutual Marine agreed to indemnify and defend UFI in National Union's declaratory judgment action. In exchange, UFI agreed

8

that "to the extent [Mutual Marine] pays any judgment or verdict against UFI in the [National Union] Litigation, or pays any settlement of any claim against UFI in the Litigation or for any further liability under the [First Agreement], [Mutual Marine] shall be subrogated to any and all rights of UFI, and/or be assigned such rights by UFI, including any right to pursue claims against GenStar for amounts paid and for attorneys fees and costs . . . ."  Second Agreement, ¶ 4.

Then Mutual Marine and National Union entered into a "Settlement and Cooperation Agreement" (the "Third Agreement"), under which Mutual Marine paid National Union $700,000 for the amount National Union had paid to satisfy UFI's obligation to ITO and the City under the First Agreement, and National Union dismissed its suit against UFI and Mutual Marine, assigning the rights it had asserted against General Star in that lawsuit to Mutual Marine.

Following the Second and Third Agreements, then, UFI has been indemnified and National Union has been paid in full. Neither of those parties has an interest in the present appeal. Mutual Marine maintains its suit against General Star for the excess over its one-million-dollar policy limit that it paid to National Union following the Third Agreement to cover UFI's alleged obligation under the First Agreement.

Mutual Marine, as directed by the district court, filed a motion for summary judgment against General Star on the limited issue of whether General Star was directly obligated under the

9

First Agreement to pay the remainder of UFI's seventy-five percent share. In an opinion and order entered July 18, 2007, the district court denied summary judgment, finding that General Star was not obligated to contribute to UFI's three-fourths share directly pursuant to the First Agreement. Nat'l Union Fire Ins. Co. of La. v. Universal Fabricators, Inc., No. 05 Civ. 3418, 2007 WL 2059840, at *5, 2007 U.S. Dist. LEXIS 51925, at *22-23 (S.D.N.Y. July 18, 2007) ("Nat'l Union I"). The court concluded that because General Star was not aware of, did not take part in, and was not a party to the First Agreement, it was not directly bound by its terms. Id. The opinion explicitly refrained from addressing whether General Star was obligated under the terms of the GenStar Policy itself to pay the amount in dispute, and invited General Star to move for summary judgment on that issue. Nat'l Union I, 2007 WL 2059840 at *6, 2007 U.S. Dist. LEXIS 51925 at *26-27 ("The present motion for summary judgment was made on the limited issue of whether GenStar was bound under the terms of the First Agreement . . . . As a result, this Opinion does not address the remaining issue of whether GenStar is bound to pay under the terms of its excess insurance policy. GenStar may move for summary judgment on this issue.").

General Star did just that. But in a memorandum opinion and order entered September 14, 2007, the district court denied General Star's motion and, instead, entered summary judgment for Mutual Marine. The court found that although General Star was not directly bound by the First Agreement, it

10

was nonetheless obligated to reimburse Mutual Marine under the terms of the GenStar Policy. Nat'l Union Fire Ins. Co. of La. v. Universal Fabricators, Inc., No. 05 Civ. 3418, 2007 WL 2701990, at *2-3, 2007 U.S. Dist. LEXIS 68100, at *5-11 (S.D.N.Y. Sept. 14, 2007) ("Nat'l Union II").

The district court noted that the GenStar Policy provided that General Star would pay in the event of a judgment in excess of Mutual Marine's policy limit for "ultimate net loss," which, the policy stated, "'may be established by adjudication, arbitration or a compromise settlement to which [General Star] ha[s] previously agreed in writing.'" Nat'l Union II, 2007 WL 2701990 at *1, 2007 U.S. Dist. LEXIS 68100 at *2 (quoting GenStar Policy at ¶ 23). The court found that UFI had agreed to "indemnify, defend and hold harmless ITO and the City," 2007 WL 2701990 at *2, 2007 U.S. Dist. LEXIS 68100 at *5, and concluded that the directed verdict by the New York Supreme Court against ITO and the City was "[u]nder any definition of the term, . . . an 'adjudication' of liability as to ITO and the City (and ultimately, of UFI if and when called upon to indemnify ITO and the City)," 2007 WL 2701990 at *2, 2007 U.S. Dist. LEXIS 68100 at *6.

The district court decided that because the Ernish judgment was an adjudication with respect to ITO and the City, who were named in the GenStar Policy as additional insureds, and because in the district court's view the Ernish judgment was also an adjudication with respect to UFI, General

11

Star was liable to pay the excess over Mutual Marine's policy limit under the terms of the GenStar Policy, which provided that an "adjudication" establishing "ultimate net loss" was a covered loss. 2007 WL 2701990 at *2, 2007 U.S. Dist. LEXIS 68100 at *6.

Summary judgment was entered for Mutual Marine. General Star appeals.

**DISCUSSION**

The judgment in favor of Ernish has been satisfied. The question on appeal is whether Mutual Marine must bear the full cost -- including a significant amount that exceeds its million-dollar policy limit -- that it paid to National Union to cover the share of the Ernish judgment UFI allegedly owed under the terms of the First Agreement, or whether General Star is obligated to reimburse Mutual Marine for that excess. The district court found the latter, that General Star was obligated to reimburse Mutual Marine based on the judgment against ITO and the City, both because ITO and the City were additional insureds under the GenStar Policy and because the district court considered the judgment effectively also to be an adjudication against UFI, General Star's primary insured. We conclude that the district court erred in holding General Star obligated to reimburse Mutual Marine on either of these grounds. Because there remains a question, substantially unaddressed in the district court, as to whether General Star may be obligated to reimburse Mutual Marine on other grounds, i.e., whether liability

12

was established against UFI by means other than the judgment against ITO and the City that would obligate General Star to pay -- we vacate the summary judgment and remand the cause for further proceedings.

### I. Standard of Review and Applicable Substantive Law

"We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Rule 56(c)). An issue of fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Roe, 542 F.3d at 35 (citation and internal quotation marks omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." Id. (citation and internal quotation marks omitted).

Federal jurisdiction over this case is based on diversity of citizenship. In the absence of any contractual obligation of the parties to the contrary, we therefore apply the

13

substantive law of the forum state, New York. See, e.g., Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005).

## II. Liability under the First Agreement Alone

The district court correctly decided that General Star was not directly obligated to reimburse Mutual Marine under the First Agreement, which settled the third-party action brought by ITO and the City against UFI.[1] See Nat'l Union I, 2007 WL 2059840 at *6, 2007 U.S. Dist. LEXIS 51925 at *26. As the district court pointed out, under New York law, a settlement agreement "'is not binding upon a party unless it is in a writing subscribed by him or his attorney . . . .'" 2007 WL 2059840 at *5, 2007 U.S. Dist. LEXIS 51925 at *18-19 (quoting New York Civil Practice Laws and Rules § 2104). Because the First Agreement was not subscribed to by General Star or its attorney or other agent, General Star is not directly bound by its terms. See, e.g., Bonnette v. Long Island College Hosp., 3 N.Y.3d 281, 286, 819 N.E.2d 206, 208-09, 785 N.Y.S.2d 738, 740-01 (2004).

## III. Liability under the GenStar Policy

The harder question is whether General Star is bound by the terms of its own policy with UFI to reimburse Mutual Marine. Under the terms of the GenStar policy, General Star was obligated

---

[1] As explained below, this finding is distinct from the question of whether General Star may be indirectly obligated by the First Agreement to reimburse Mutual Marine. Such would be the case if the First Agreement established UFI's liability. That question was not addressed in substance by the district court.

14

to pay its insured for "ultimate net loss" in excess of the primary insurer's limit. According to the policy:

> Ultimate net loss means the total amount of damages for which the Insured is legally liable. Ultimate net loss may be established by adjudication, arbitration or a compromise settlement to which we have previously agreed in writing.

GenStar Policy at ¶ 23.

While General Star appears to have assumed that under Paragraph 23, the legal liability binding an insured could only be established by an adjudication, arbitration, or compromise settlement to which General Star agreed,[2] that is not what the provision says. It defines "ultimate net loss" as "the total amount of damages for which the Insured is legally liable." It then provides that "ultimate net loss," thus defined as an "amount," may be established by "adjudication, arbitration or a compromise settlement to which [General Star] ha[s] previously agreed in writing." In other words, as Mutual Marine appears to acknowledge,[3] it is the amount of damages for which the insured is legally liable that "may be established by adjudication, arbitration or a compromise settlement to which [General Star]

---

[2] See, e.g., Appellant's Reply Br. 4 ("[F]or coverage to exist in the first instance, there must be damages for which UFI became legally liable because of 'an adjudication, arbitration or compromise settlement to which General Star previously agreed in writing." (internal quotation marks and alterations omitted, emphasis added)).

[3] See Appellee's Br. 28 ("[N]othing in the GenStar policy requires a final adjudication to be entered as a judgment against the insured; only that adjudication (or arbitration or approved settlement) establish the amount.") (emphasis added).

ha[s] previously agreed in writing," not the legal liability itself. The establishment of liability is the predicate to the applicability of the provision rather than being governed by it.[4]

The preliminary issue that must be addressed on this appeal, then, is whether General Star's insured was legally liable for _any_ amount, which liability would trigger the provision concerning the establishment of the amount of such liability. In other words, only if General Star's insured was legally liable does the question arise as to whether the _amount_ of that liability was established in a manner consonant with the terms of the GenStar Policy.

A. Establishment of Liability by the _Ernish_ Lawsuit Alone.

The district court decided that the _Ernish_ lawsuit, which resulted in the $2,175,000 judgment of liability against ITO and the City, was an adjudication of liability as to both ITO and the City and, "ultimately," as to UFI "if and when called upon to indemnify ITO and the City." _Nat'l Union II_, 2007 WL 2701990 at

---

[4] Indeed, General Star's interpretation of Paragraph 23 to mean that the legal liability binding an insured, in addition to the amount of damages for which the insured is liable, can only be established by an adjudication, arbitration, or General Star-approved settlement, would render extraneous several other provisions in the GenStar Policy. For example, Section V, Paragraph 5(d) of the policy provides that "[n]o insureds will, except at their own cost, . . . assume any obligation . . . without our consent." That injunction would be redundant if the very definition of Ultimate Net Loss, set forth in Paragraph 23, limited the universe of ways to establish UFI's liability to adjudication, arbitration, and General Star-approved settlements. See also GenStar Policy Section I, Coverage B, ¶ 2(a)(4) (providing limited exclusion from coverage for liability assumed by the insured in a contract or agreement).

16

*2, 2007 U.S. Dist. LEXIS 68100 at *6.  The district court concluded that General Star was obligated to reimburse Mutual Marine based on each of these alleged adjudications of liability.

### 1. Adjudication as to ITO and the City.

The district court was obviously correct in finding that the Ernish lawsuit was an adjudication of liability as to ITO and the City, against whom the judgment was entered.  It does not follow, however, that General Star is obligated to reimburse Mutual Marine on the basis of that adjudication.

Mutual Marine brought this lawsuit against General Star based on UFI's rights, to which it had succeeded, not those of ITO and the City.  Only the seventy-five percent share ostensibly apportioned to UFI in the First Agreement has ever been at issue in the litigation against General Star, and not the twenty-five percent share apportioned to ITO and the City.  Indeed, three of the five cross-claims filed by Mutual Marine against General Star are based explicitly on rights belonging to UFI.  See Am. Ans. to Sec. Am. Compl. ¶¶ 32-64.

The fourth cross-claim includes mention of rights allegedly belonging to ITO and the City and their insurer, National Union, against General Star.  See Am. Ans. to Sec. Am. Compl. ¶¶ 143-57.  But in its motion papers before the district court, Mutual Marine explicitly disavowed the notion that it was basing a claim against General Star on claims belonging to ITO and

17

the City.[5]  To the extent that the fourth cross-claim mentions any rights of ITO and the City or their insurer against General Star, it does so as background for its assertion that the First Agreement -- which the district court has already correctly found not to bind General Star directly -- was beneficial to General Star.  See generally Am. Ans. to Sec. Am. Compl. ¶¶ 143-157; see, e.g., Am. Ans. to Sec. Am. Compl. ¶ 146 ("By virtue of the added Insured status of New York City and ITO . . . the [First Agreement] . . . reduced by 25% the possibility that any judgment would pierce [General Star's] excess umbrella layer of coverage.").  Indeed, Mutual Marine's motion papers refer throughout to UFI, not ITO and the City, as the "insured."

Finally, the fifth cross-claim asserts a nebulous "independent right" against General Star allegedly belonging to Mutual Marine.  Am. Ans. to Sec. Am. Compl. ¶ 159.  It is not alleged to have ever belonged to ITO or the City.

Thus Mutual Marine's position throughout this litigation has been that General Star is liable to it based on "its insuring agreement with its insured UFI [which] obligated it to pay the sums UFI became obligated to pay as a result of an unquestionably

---

[5]  See Mem. of Law in Opp'n to Mot. for Summ. J. at 20, Nat'l Union Fire Ins. Co. of La. v. Universal Fabricators, Inc., et al., No. 05 Civ. 3418 (SAS) (S.D.N.Y. Aug. 29, 2007) (Doc. No. 61) ("[General Star argues] that Mutual Marine acquired no rights against [General Star] from ITO's subrogated carriers.  [That argument] can be put aside because it is concededly correct, since those carriers, as subrogees of the City and ITO, never had any rights against [General Star], only against UFI."); see also id. at 8 ("Essentially . . . Mutual Marine's rights vis-a-vis [General Star] are those obtained through common law subrogation from their insured, UFI.").

18

covered loss." Mem. of Law in Opp'n to Mot. for Summ. J. at 11. That continues to be Mutual Marine's position on appeal. See Appellee's Br. 35 (describing Mutual Marine as seeking reimbursement for "satisfy[ing] [the] judgment . . . entered against UFI Fabricators, Inc."); id. at 39 ("Mutual Marine properly showed the District Court that there was no question of fact but that General Star breached its duties to UFI and that Mutual Marine acquired UFI's right to recover for that breach by [General Star].").

Mutual Marine is not pursuing any rights that may or may not have belonged to ITO and the City (or their insurers) based on their status as additional insureds. It is therefore immaterial for purposes of this lawsuit whether General Star has ever owed ITO and the City anything as additional named insureds under the GenStar Policy. That is not the claim that was made. The material question is whether there was an adjudication of liability against UFI, for which General Star would be obligated under the GenStar Policy to reimburse UFI.

Since Mutual Marine does not assert rights in the place of ITO and the City against General Star, General Star is not liable to Mutual Marine on the basis of any direct obligation General Star may have had to ITO and the City arising out of the adjudication in the Ernish lawsuit against them.

2. Adjudication as to UFI.

The district court also concluded that the judgment against ITO and the City in the Ernish lawsuit "was an

19

'adjudication' of liability . . . ultimately[] of UFI if and when called upon to indemnify ITO and the City." Nat'l Union II, 2007 WL 2701990 at *2, 2007 U.S. Dist. LEXIS 68100 at *6 (parentheses omitted). We disagree.

Following Ernish's filing of the suit against ITO and the City -- as noted, he did not bring suit against UFI, his employer -- ITO and the City filed a third-party action impleading UFI. They claimed that they were entitled to, inter alia, contractual indemnity, common law indemnity, and "added insured" status. But before this third-party action was litigated to a conclusion, ITO and the City reached a settlement with UFI, purportedly executed on its behalf by Mutual Marine -- the First Agreement -- disposing of the third-party action and dismissing all claims against UFI with prejudice.[6]

By the time the Ernish suit was decided, then, UFI was no longer party to it. When the state trial court directed a verdict of liability against the defendants, ITO and the City, and the jury thereafter awarded damages of $3 million (reduced on appeal to $2,175,000), judgment was not entered against non-party UFI.

---

[6] The First Agreement provided:

> [A]ll claims between UFI and ITO/City in connection with the [Ernish] Lawsuit, including third-party claims, indemnity claims, contribution claims, counter-claims and cross-claims, shall be released and voluntarily discontinued with prejudice . . . .

First Agreement at p. 2.

The district court thought it "puzzling" that General Star would complain about the First Agreement because, in the court's view, absent the First Agreement, General Star would have been obligated to pay one-hundred percent of the Ernish judgment in excess of Mutual Marine's policy. Nat'l Union II, 2007 WL 2701990 at *2, 2007 U.S. Dist. LEXIS 68100 at *7. In the Ernish litigation, ITO and the City were held strictly liable for Ernish's injuries under New York's scaffolding law. See N.Y. Labor Law § 240(1);[7] Ernish, 2 A.D.3d at 256-58, 768 N.Y.S.2d at 325-26. Liability pursuant to this statute is "not predicated on fault: it is imputed to the owner or contractor by statute and attaches irrespective of whether due care was exercised and without reference to principles of negligence." Brown v. Two Exch. Plaza Partners, 76 N.Y.2d 172, 179, 556 N.E.2d 430, 433, 556 N.Y.S.2d 991, 994 (1990) (internal citation omitted). While strict liability attaches under section 240(1), "[i]t is well settled that an owner or general contractor who is held strictly

---

[7]

> All contractors and owners and their agents, . . . who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

N.Y. Labor Law § 240(1).

liable under Labor Law § 240(1) is entitled to full indemnification from the party actually responsible for the incident." Frank v. Meadowlakes Dev. Corp., 6 N.Y.3d 687, 691, 849 N.E.2d 938, 940, 816 N.Y.S.2d 715 (2006) (internal quotation marks and citation omitted). Thus, if UFI was "actually responsible" for Ernish's injuries, it could have become liable to indemnify ITO and the City for the judgment against them.

But that outcome was uncertain. A party seeking either contractual or common law indemnity must "establish that it was free from any negligence and was held liable solely by virtue of the statutory liability." Correia v. Prof'l Data Mgmt., Inc., 259 A.D.2d 60, 65, 693 N.Y.S.2d 596, 600 (1st Dep't 1999); see also Brown, 76 N.Y.2d at 180-81, 556 N.E.2d at 545, 556 N.Y.S.2d at 995 (explaining that New York law "prohibit[s] indemnity agreements in which owners or contractors [seek] to pass along the risks for their own negligent actions to other contractors or subcontractors, even if the accident was caused only in part by the owner's or contractor's negligence." (emphasis in original)). Therefore if UFI could prove that ITO or the City were negligent in connection with the incident that caused Ernish's injuries, UFI would not have been obligated to indemnify ITO and the City for their losses.[8]

---

[8] Indeed, the district court acknowledged General Star's argument that this uncertainty regarding ITO and the City's ability to establish UFI's liability motivated the decision to settle the third-party action. Nat'l Union II, 2007 WL 2701990 at *2, 2007 U.S. Dist. LEXIS 68100 at *7.

The district court found, nonetheless, and Mutual Marine urges on appeal, that there was no evidence in the record of negligence on the part of ITO or the City and that UFI therefore would have had to indemnify them. Nat'l Union II, 2007 WL 2701990 at *2, 2007 U.S. Dist. LEXIS 78100 at *7. But the district court was in no position to make that finding at the summary judgment stage, as a matter of law. The question of any such negligence was not before the district court and there was therefore no basis for a belief that the record before the district court contained all possible evidence of such negligence. Put another way, the district court was making a finding in a lawsuit that was not before it -- a hypothetical third-party action by ITO and the City against UFI that was litigated to the finish.

Thus the Ernish adjudication was not tantamount to an adjudication of "legal liability" on the part of the relevant "insured" in this case, UFI. And without an establishment of legal liability, "ultimate net loss" could not be established either.

B. Establishment of Liability Pursuant to the First Agreement.

Although the Ernish adjudication did not establish the legal liability of UFI for Ernish's judgment, the First Agreement itself may have. If it was properly executed by Mutual Marine on behalf of UFI and rendered UFI liable for three-quarters of the judgment against ITO and the City, then the Ernish adjudication would have determined not liability, but the amount for which UFI was legally liable, thereby constituting an "ultimate net loss"

23

for which General Star was liable under its policy.[9]  In other words, it is possible that the First Agreement, which preceded the Ernish adjudication, provided that UFI was 75% liable for the underlying accident at issue in the adjudication, and the adjudication itself then determined the amount for which UFI was legally liable.

At first blush, using the First Agreement to establish the legal liability of UFI would appear to violate the condition in the GenStar Policy that "[n]o insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent," GenStar Policy, Section V, ¶ 5(d).  But as Mutual Marine argues and General Star appears to concede, General Star never issued a disclaimer to that effect, as it was required to do under N.Y. Ins. Law § 3420(d)(2).[10]

---

[9]  The possibility that the First Agreement established the legal liability of UFI and thereby indirectly bound General Star to pay an ultimate net loss determined by the Ernish adjudication is not to be confused with the argument originally proposed by Mutual Marine and rejected by the district court in its July 18, 2007, opinion and order that General Star, a non-signatory to the First Agreement, was directly bound by the First Agreement to contribute to the three-fourths share of the Ernish judgment ostensibly apportioned to UFI by the First Agreement.  The district court's rejection of that argument was correct for the reasons set forth above.

[10]  N.Y. Ins. Law § 3420(d)(2) provides:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the

See Reyes v. Diamond State Ins. Co., 35 A.D.3d 830, 831, 827 N.Y.S.2d 263 (2d Dep't 2006) ("An insurer must give written notice of a disclaimer of coverage as soon as is reasonably possible [pursuant to N.Y. Ins. Law § 3420] after it first learns of the accident or of grounds for disclaimer of liability or denial of coverage. This rule applies not only to an insurer's disclaimer of primary insurance coverage, but to a disclaimer of excess coverage as well.") (internal quotation marks and citations omitted); see also Mann v. Gulf Ins. Co., 3 A.D.3d 554, 556, 771 N.Y.S.2d 176 (2d Dep't 2004).

General Star argues that it was not required to disclaim coverage because "[d]isclaimer pursuant to Insurance Law section 3420(d) is unnecessary when a claim falls outside the scope of the policy's coverage portion." See Appellant's Reply Br. 3 (quoting Worcester Ins. Co. v. Bettenhauser, 95 N.Y.2d 185, 188, 712 N.Y.S.2d 433, 435, 734 N.E.2d 745 (2000) (internal quotation marks and alterations omitted)). But it bases this argument on the notion that Section VI, Paragraph 23 of the GenStar Policy limited the ways UFI's legal liability, rather than simply the amount of such liability, could be established, see Appellant's Reply Br. 3-4, a notion that is incorrect. As we have explained, it did not. General Star does not argue that Paragraph 5(d) alone would take the First Agreement "outside the scope of the policy's coverage portion" such that disclaimer would be unnecessary, and such an

insured and the injured person or any other claimant.

Id.

25

argument would fail because Paragraph 5(d) is a self-proclaimed "policy condition" that is plainly in the nature of an exclusion, for which disclaimer is required, and is not part of the "coverage portion" of the GenStar Policy. See Columbia Cas. Co. v. Nat'l Emergency Servs., Inc., 282 A.D.2d 346, 347, 723 N.Y.S.2d 473 (1st Dep't 2001) ("It is settled that failure by the insurer to give written notice of disclaimer based on an exclusion or failure to comply with a policy condition as soon as is reasonably possible renders the disclaimer ineffective.") (emphasis added, internal citation omitted); cf. Zappone v. Home Ins. Co., 55 N.Y.2d 131, 134-35, 447 N.Y.S.2d 911, 432 N.E.2d 783 (1982) (concluding that insurer did not have to disclaim coverage for accident involving automobile that was not the subject of the insurance policies in question).

Therefore Section V, Paragraph 5(d) of the GenStar Policy does not foreclose the possibility that the First Agreement established UFI's liability and thereby, in conjunction with the Ernish litigation, obligated General Star to reimburse Mutual Marine for the excess Mutual Marine paid over its policy limit to cover UFI's share of the judgment.

General Star also argues, however, that it was not required to issue a disclaimer because "UFI[] disavowed any obligation under the first settlement agreement. As such [sic], this agreement could not create any obligation to disclaim coverage to UFI or Mutual Marine." Appellant's Reply Br. 6 (emphasis in original, internal citations omitted). In letters

26

sent to Mutual Marine prior to litigation in this matter, UFI represented that it had never authorized Mutual Marine to execute the First Agreement on its behalf. The letters, also sent on behalf of General Star, state that it "remains clear and indisputable -- in fact Mutual Marine does not even argue to the contrary -- [] that neither General Star nor [UFI] ever authorized Mutual Marine to execute the so-called [First Agreement] on their behalf," Jun. 19, 2002 Letter at 1, and "neither General Star nor principals of [UFI] ever gave permission or express authorization for Mutual Marine to execute th[e] [First Agreement] on their behalf." Letter from General Star and UFI to Mutual Marine, at 1 (May 10, 2002). Handwritten notes allegedly written by Mutual Marine's Loss Secretary prior to the execution of the Second Agreement regarding National Union's action against Mutual Marine, General Star, and UFI, indicate, moreover, that Mutual Marine was concerned about the availability to General Star of an argument that UFI never consented to the First Agreement. According to the notes, "[there is] [n]o way [UFI] will be left without insurance so it[']s MMO [Mutual Marine] v. Gen[eral] Star. If Gen[eral] Star get[s] [UFI] on its side, [its] position will be that [Mutual Marine] took upon itself to incur exposure past its limit - without properly advising [UFI]." Paul Smith Handwritten Notes, May 2, 2005, Declaration of Natasha Van Der Griendt in Opp. to Mot. for Summ. J., Ex. M, Nat'l Union Fire Ins. Co. of La. v. Universal Fabricators, Inc., No. 05 Civ. 3418 (SAS) (S.D.N.Y. Apr. 27, 2007) (Doc. No. 42).

27

Plainly, if UFI was never bound by the First Agreement, that agreement could establish no legal liability on the part of UFI for which General Star would be liable under the GenStar Policy. In that case, there would also be no need for General Star to have disclaimed. See Zappone, 55 N.Y.2d at 138-39, 447 N.Y.S.2d at 911 ("[T]he Legislature in using the words 'denial of coverage' did not intend to require notice when there never was any insurance in effect, and intended by that phrase to cover only situations in which a policy of insurance that would otherwise cover the particular accident is claimed not to cover it because of an exclusion in the policy."); cf. Matter of Arbitration Between State Farm Mut. Auto. Ins. Co. (Merrill), 192 A.D.2d 824, 825, 596 N.Y.S.2d 554, 555 (3d Dep't 1993) ("It is true that an insurance company is not subject to the timely disclaimer provisions contained in [N.Y.] Insurance Law § 3420(d) where no coverage existed under the policy.").

Because it granted summary judgment on the grounds of the Ernish adjudication alone, the district court appears not to have decided whether the First Agreement established the legal liability of UFI and thereby obligated General Star to reimburse Mutual Marine in this action in an amount determined by the outcome of the Ernish adjudication. Inasmuch as the answer to this question depends on the factual question of whether UFI was

28

ever bound by the First Agreement, we think it is a question best left to the district court to answer in the first instance.[11]

C. Remaining Arguments

We have considered General Star's other arguments on this issue and find them to be without merit.

IV. Mutual Marine as a "Volunteer"

General Star argues, as it did before the district court, that it was entitled to summary judgment because Mutual Marine was acting as a "volunteer" when it agreed to indemnify and defend UFI, pursuant to the Second Agreement, and when it paid National Union the $700,000 at issue, pursuant to the Third Agreement. If the payment was indeed voluntary, then General Star has no obligation to reimburse Mutual Marine for it. See Merch. Mut. Ins. Group v. Travelers Ins. Co., 24 A.D.3d 1179, 1180, 806 N.Y.S.2d 813 (4th Dep't 2005) ("[W]hen an insurer who is not

---

[11]    In finding that General Star was not entitled to summary judgment on the ground that Mutual Marine was acting as a volunteer when it paid an amount in excess of its million-dollar policy limit, the district court referred in passing to UFI's status as "the party to the First Agreement who owed the remainder of the seventy-five percent apportionment of the judgment . . . ." Nat'l Union II, 2007 WL 2701990 at *3, 2007 U.S. Dist. LEXIS 68100 at *10. Because the district court had already found that UFI owed the remainder of the seventy-five percent because in the view of the district court the Ernish adjudication was "ultimately" an adjudication of UFI's liability, and because the district court did not analyze the contested issue of whether UFI was bound by the First Agreement, we do not understand the district court's passing reference to UFI as a "party" to the First Agreement, in a context outside the issue of determining UFI's liability, to constitute a finding of fact that UFI was bound by the First Agreement. We express no opinion as to whether UFI was bound by the First Agreement and, as indicated in the text, we leave that finding to the district court on remand.

acting under a mistake of material fact or law assumes the defense and indemnification of an insured when there is no obligation to do so, that insurer becomes 'a volunteer with no right to recover the monies it paid on behalf of the insured.'" (quoting Nat'l Union Fire Ins. Co. v. Ranger Ins. Co., 190 A.D.2d 395, 397, 599 N.Y.S.2d 347 (4th Dep't 1993)) (internal alterations omitted). However, when Mutual Marine agreed to indemnify UFI, it did not do so without compensation. It received in return whatever rights UFI had against General Star.

General Star relies on the familiar proposition that "an assignor 'could only assign a right that it legally possessed' and an assignee's rights are no greater than those of the assignor." Appellant's Br. 40 (quoting Case v. Filmtrucks, 118 A.D.2d 749, 752, 500 N.Y.S.2d 141 (2d Dep't 1986); citing Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc., 36 N.Y.2d 121, 126, 365 N.Y.S.2d 808 (1975)). The district court found that UFI did have a claim against General Star to assign to Mutual Marine, and therefore Mutual Marine was not acting as a volunteer when it paid in excess of its policy limit. However, the district court had already determined that the Ernish adjudication was ultimately an adjudication against UFI for which General Star was obligated to pay, a determination with which we disagree.

Although the Ernish adjudication in itself did not establish an "ultimate net loss" with respect to UFI such that UFI had a claim against General Star that it could assign to Mutual Marine, it may have done so if the legal liability of UFI was

30

established under the First Agreement or otherwise.  Because we leave it for the district court on remand to determine in the first instance whether the legal liability of UFI was established in any way other than by the Ernish judgment alone, the district court may also resolve on remand the related factual question of whether Mutual Marine was acting as a volunteer when it paid an amount in excess of its policy limit.

###### V.  Mutual Marine's Pleading of a Claim Based on UFI's Rights

General Star also appears to argue that Mutual Marine failed adequately to plead a cross-claim based on rights of UFI that it had obtained by subrogation or assignment.  But as discussed above, Mutual Marine's motion papers before the district court made explicit that it was asserting UFI's rights in this lawsuit.  In any event, Mutual Marine sought leave to re-plead its cross-claims, see Mem. of Law in Opp'n to Summ. J. at 21, Nat'l Union Fire Ins. Co. of La. v. UFI Fabricators, Inc., No. 05 Civ. 3418 (SAS) (S.D.N.Y. Aug. 29, 2007) (Doc. No. 61), a request the district court did not reach because it granted summary judgment in favor of Mutual Marine.  On remand, the district court may consider that request in the first instance if the court deems it necessary or advisable to do so.

### CONCLUSION

For the foregoing reasons, we vacate the district court's grant of summary judgment, and remand the cause with instructions for the court to decide, inter alia, whether UFI was

legally liable to Ernish such as to give rise to a liability on the part of General Star.